THE STATE OF WASHINGTON, *Respondent,* v. DUANE S. McGEE, *Appellant.*

*Frederick O. Frohmader,* for appellant (appointed counsel for appeal).

*Smith Troy, Prosecuting Attorney,* and *Ward J. Rathbone, Acting Deputy,* for respondent.

PETRIE, C.J.—Defendant was convicted by jury verdict of the crime of first-degree assault. His appeal from the judgment and sentence entered thereon raises three separate issues. He contends that he did not receive a fair trial because (1) a uniformed deputy sheriff was permitted to remain in attendance at the trial and to testify therein despite imposition of the rule to exclude witnesses; (2) a

police officer was allowed to relate a highly prejudicial hearsay statement to the jury; and (3) several jurors allegedly developed a bias during the course of the trial from information relayed to them by their children who remained in attendance during periods when the jury was excused. In our opinion the defendant did receive a fair trial.

■ There was no error in permitting the deputy sheriff to remain in attendance and also to testify. The trial court's discretion to permit the prosecution to have one witness remain in attendance throughout the trial has been clearly enunciated:

> This court has long followed the rule that the exclusion of witnesses is a matter within the trial court's discretion which will not be disturbed except for manifest abuse. When the exclusionary rule is invoked, it is customary to exempt one witness to confer with the prosecutor during the trial.

(Footnote and citation omitted.) *State v. Weaver*, 60 Wn.2d 87, 90, 371 P.2d 1006 (1962).

The hearsay evidence which the police officer was allowed to relate to the jury was most damaging to the defendant's cause. It was, however, admissible testimony. Some factual background is necessary to place it in proper perspective.

During the evening of September 2, 1969, Mrs. Shirley Kimbler and her husband were seated at a table in the bar at Ben Moore's Restaurant in Olympia. During the course of the evening they were joined by the defendant, Duane S. McGee (who apparently is also sometimes referred to as Wayne). After McGee had been seated for awhile, the subsequent victim of this assault, Everett Ray Armstrong, approached the table. Several unpleasantries were exchanged between Armstrong and McGee related to a long-standing feud between them. Apparently the two men agreed not to discuss their disagreement further inside the premises; rather, they mutually decided to "settle" matters outside.

Some further discussion took place between Mrs. Kim-

bler and McGee and then she left the table and also talked to Armstrong, who by that time had stopped at the bar. It is apparent from the record that she was attempting to dissuade both men from pursuing their long-standing feud. Her efforts were unsuccessful. They both left the premises at about the same time and within a few moments after their initial encounter at the Kimbler table.

As Armstrong was leaving, he exchanged a passing greeting to Officer Oscar Schuler, who had just entered the front of the premises. When Mrs. Kimbler saw Schuler, she approached him as he stood at the door and reported to him that somebody was going to get hurt. Her exact words, according to Officer Schuler, who related them to the jury over defendant's objection, were: "Wayne is going to shoot Armstrong and he has a rifle in his car."

Officer Schuler went outside, attempted to intercept Armstrong and McGee, but the two men drove away, each in his own vehicle; McGee in the lead, Armstrong following. Within 11 minutes, Armstrong had been shot, had walked to a tavern west of Olympia, and the shooting had been reported, by telephone, to an ambulance company in Olympia. Armstrong contends McGee shot him with a rifle after they had both stopped their cars west of Olympia. McGee contends he eluded Armstrong's vehicle, did not even have a rifle in his car, and neither shot Armstrong nor saw him again that night.

The physician who examined Armstrong in the early morning hours of September 3, 1969, testified that Armstrong had two bullet wounds. One projectile entered the upper abdominal area, leaving powder burns on the abdomen and coursed through the outer edge of the right lobe of the liver. The other projectile entered the left shoulder blade, posteriorly, leaving no powder burns and subsequently fragmented; the various portions thereof lodged in soft tissue without having struck any vital vessels.

Quite obviously, therefore, Officer Schuler's recital of what Mrs. Kimbler had related to him on the evening of September 2, 1969, was most damaging testimony from

McGee's standpoint. We have examined Schuler's testimony considering the criteria for admissibility under the res gestae exception to the normal rule of exclusion of hearsay evidence. *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939).

Mrs. Kimbler's remark to Officer Schuler related to and characterized the main event in the sense that the main event commenced with the uncomplimentary epithets; constituted a spontaneous utterance of a fact growing naturally out of the event; was evoked by the understandable concern of a witness to the event for the safety of both major participants; and was made under circumstances which exclude the presumption that it was the result of deliberation. The crucial question in all cases is whether or not the statement was made while the declarant was still under the influence of the event to the extent that her statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment. *Johnston v. Ohls*, 76 Wn.2d 398, 457 P.2d 194 (1969). We believe Officer Schuler's recital of Mrs. Kimbler's declaration was properly admissible. *State v. Daba*, 75 Wn.2d 234, 450 P.2d 183 (1969).

Turning finally to defendant's contention of bias by two of the jurors, the evidence in support thereof is presented through two affidavits, one by the defendant's brother and one by defendant's counsel. As to juror number one, the affidavits establish merely that her child was present in the courtroom during the trial. As to juror number four, the affidavits assert that her child (1) was present in the courtroom during trial, (2) talked to a deputy sheriff, (3) overheard an incriminating conversation between counsel, and (4) expressed to his mother his own conclusion and belief that the defendant was guilty.

In the morning of the last day of trial the presence of these children was brought to the attention of the trial court. In chambers, and in the presence of both counsel, the trial court discussed the matter with the juror concerned. Part of that discussion follows:

[Juror No. 4]: My son told me yesterday that while we went upstairs he talked to a deputy. I said, "I just don't want to know what was said at all." I said, "I can't discuss it with you." That was all that was said.

THE COURT: Well, while the trial is going on and you are sitting in there, there is no problem. The problem is when I discuss, and the jury is excused you understand, there are motions and testimony that the jury is not supposed to hear. All I want to be clear is that there has been no communication between you and your child as to what has gone on or the possibility also that he has talked to any of the witnesses outside in the hall. and communicated anything to you.

I will ask you, has there been anything of that nature at all?

[Juror No. 4]: The only witnesses he talked to were the deputies and I told him I didn't want to hear about it.

■ There can be little doubt that the right to jury trial includes the right to an unbiased and unprejudiced jury. *State v. Parnell*, 77 Wn.2d 503, 463 P.2d 134 (1969). However, the governing standard as to whether or not a new trial should be granted because of prejudice or bias of a juror is whether or not the conduct or irregularity described establishes a reasonable doubt that the party seeking the new trial received a fair trial. Something more than a mere possibility of prejudice must be shown. *Spratt v. Davidson*, 1 Wn. App. 523, 463 P.2d 179 (1969); *Carlos v. Cain*, 4 Wn. App. 475, 481 P.2d 945 (1971). The record does not establish even an arguable reasonable doubt. There is no reason to believe the trial court abused its discretion in denying the motion for new trial.

Judgment affirmed.

PEARSON and ARMSTRONG, JJ., concur.

Petition for rehearing denied April 18, 1972.

Review denied by Supreme Court June 7, 1972.