[No. 790-2. Division Two. April 4, 1973.]

THE STATE OF WASHINGTON, *Respondent*, v. WALKER
EDWARD KENNEDY, *Appellant.*

*Alan Rasmussen,* for appellant (appointed counsel for appeal).

*Ronald L. Hendry, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

ARMSTRONG, J.—The defendant, Walker Edward Kennedy, appeals from a judgment and sentence entered pursuant to a jury verdict of guilty of robbery and a special finding that he was armed with a deadly weapon.

The appeal raises three issues: (1) Was the search of the house wherein defendant was found illegal as the product of an illegal arrest? (2) Did the trial court err in denying the defendant's motion to exclude the panel of

prospective jurors who witnessed a portion of the related proceedings? (3) Was the defendant denied his right to effective counsel when the same counsel represented two of the three defendants named in the information? We answer each question in the negative.

On February 25, 1972 two black males stepped out of an automobile parked in an alley across the street from Hicks Grocery in Tacoma. A third black male remained in the automobile. The two men entered the store. One of them held a pistol to the head of Flora Hicks, the second took Samuel Hicks' wallet and the cash from the cash register. They then fled.

A passing motorist saw the two men get into the automobile and watched as the three men drove away. He wrote down the license number of their vehicle and gave it to the police when they arrived. Neither Samuel nor Flora Hicks could provide a detailed description of the robbers except that they were black and one had worn a blue bandana over his head and was carrying a gun.

The license number and a description of the getaway vehicle were broadcast over the police radio. Several police officers on patrol proceeded to the area of the grocery store. The automobile was found a few blocks from the store and the license number was checked to ascertain the vehicle's registered owner. James Arthur Everett, whose residence was only half a block from where the vehicle was found, was the registered owner. Several Tacoma police officers converged on the Everett residence. They knocked on the door but received no response. Lieutenant Gallwas, a detective with the Tacoma Police Department, arrived and went up to the front porch. While debating whether to obtain a search warrant, he learned that a neighbor woman had seen three black males arrive in the automobile, get out and go into the Everett residence. He knocked again loudly. Receiving no response and without identifying themselves as police officers, they forcefully entered the home and arrested the three men, Kennedy, Everett and Jimmy Rae Richards. All three were taken into custody. Both James

Arthur Everett and his father, Earl Everett, gave the police written consent to search the house. The search uncovered the stolen items and the pistol. These were used to secure the convictions of all three men.

James Arthur Everett pleaded guilty to grand larceny and agreed to testify against the other two defendants at their trial. Alan Rasmussen was appointed attorney for both Richards and Kennedy. On the day of trial Richards pleaded guilty to robbery. While the court was questioning Richards as to the voluntariness of his plea, the panel of prospective jurors entered the courtroom. Defense counsel moved to exclude the panel of prospective jurors. Denying this motion, the court stated:

> THE COURT: It is the Court's opinion that he stopped all proceedings here which did not involve the remaining Defendant Kennedy in time, that the jurors were not paying any attention to whom was where but were looking for seats, and it will come out in the evidence definitely that there were three participants, there being one defendant remaining; and knowing or believing that the jurors, being laymen, cannot even suspicion the purpose of three people being up before the Court. It might be on an entirely different matter. For that reason, the Court would deny but can appreciate Defendant's Counsel's motion, . . .

The panel was sent out of the courtroom and the questioning continued. During this interrogation Richards informed the court that he and Kennedy were the two who entered the store and that Kennedy was the one who carried the gun.

Richards was not called by either party to testify during the trial. James Everett's testimony was consistent with the version Richards told the court when he pleaded guilty. The defendant Kennedy's version was that he stayed in the parked automobile and that Richards and Everett were the only two involved in the robbery. Thus, Kennedy denied any knowledge of the robbery prior to its occurrence. The jury disbelieved his story and found him guilty of robbery.

The defendant's first contention on appeal is that all evi-

dence seized during the search of the Everett residence should have been excluded as the product of an illegal arrest. His argument is that the entry of the officers into the house and the subsequent arrest were illegal because the officers did not have probable cause to believe that any occupants of the house had committed a felony. He also argues that the arrest was illegal because the officers did not announce their identity and purpose prior to the entry as required by RCW 10.31.040.[1]

The defendant rests both of these contentions upon the testimony of Lieutenant Gallwas of the Tacoma Police Department. Lieutenant Gallwas testified that when he arrived, there were already four other officers at the house. He did not know what happened before he arrived but he knocked loudly on both the front and the back doors. He did not at any time announce who he was or what his purpose was. His knocks were met with silence inside the house. It was only when he learned that a neighbor woman had seen three black males enter the house shortly before his arrival that he decided to break in.

We need not discuss the validity of the initial entry or the arrest of the three suspects because neither an invalid entry nor an unlawful arrest would invalidate the defendant's conviction. It is the admission of evidence obtained incident to or as a result of illegal activity which can upset the conviction. *State v. Melrose*, 2 Wn. App. 824, 470 P.2d 552 (1970). Evidence obtained from an independent source may be proved like any other evidence. *Carpenter v. United States*, 463 F.2d 397 (10th Cir. 1972). The items which were admitted into evidence, and to which the defendant objected, were seized during a search of the premises conducted pursuant to written consent of the owner of the house, Earl Everett. The evidence showed that after their initial entry the officers attempted to obtain a search

---

[1]"To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance." RCW 10.31.040.

warrant to search for the stolen items but Earl Everett returned home and consented to a search of his home before a warrant was obtained. Thus, the search was not made incident to or as a result of either the initial entry or the arrest. Under no circumstances, then, did the admission of the seized evidence violate Kennedy's constitutional or statutory rights.

Defendant's next contention is that the court erred in denying his motion to exclude the jury panel which witnessed a portion of the proceedings in which Richards pleaded guilty to robbery. We disagree.

In *State v. Parnell*, 77 Wn.2d 503, 463 P.2d 134 (1969), the court reversed the defendant's conviction because the trial court had not excused for cause a juror who had witnessed the defendant's preliminary hearing. Noting that the juror's presence at the preliminary hearing was no momentary or casual matter, the court held that his witnessing that proceeding mandated a conclusive presumption of prejudice.

 The defendant now brings before us a "momentary or casual" witnessing of another defendant's plea of guilty and seeks the same result as occurred in *State v. Parnell, supra.* We believe no prejudice occurred and none should be presumed. The court, upon discovering that the panel of prospective jurors was entering the courtroom, immediately stopped the proceeding and asked the jurors to wait out in the hall. The court observed that, as they entered, the jurors were not paying any attention to who was before the court but were looking for seats. We are convinced that this was but a momentary or casual matter and does not establish a reasonable doubt that the defendant received a fair trial. *State v. McGee*, 6 Wn. App. 668, 495 P.2d 670 (1972).

Lastly defendant contends, in a pro se brief, that he was denied his right to effective counsel under the Sixth and Fourteenth Amendments because his court-appointed attorney also represented the codefendant Richards. Defendant argues that a conflict of interest arose because his defense

was at variance with the testimony of Richards and that counsel's failure to call Richards as a defense witness and impeach his credibility constituted actual prejudice.

■ Defendant asserts that the test to be applied in determining if a criminal defendant has been denied his right to effective counsel when the same attorney represents more than one defendant is whether there is a possibility of conflict or prejudice. We disagree. We believe this is an appropriate standard for the trial court to employ at the time counsel is appointed. Indeed, it is the only standard which may be employed at that point in the proceedings as the court is unaware of the existence of any conflict. However, when we review the proceedings in the trial court we are not confined to the application of such a speculative standard. Concededly, in judging the effectiveness of counsel we must indulge in some sort of speculation as we see only the "tip of the iceberg" in the record before us. *Lollar v. United States,* 376 F.2d 243 (D.C. Cir. 1967). However, we do have the verbatim transcript of the proceedings in the trial court. Accordingly, if we can find anything in the record which indicates that there is a possibility that the defendant may have been actually prejudiced, he has been denied his right to effective counsel. *State v. Bible,* 77 Wn.2d 69, 459 P.2d 646 (1969); *Lollar v. United States, supra.*

We do not find even a possibility that the defendant may have been actually prejudiced. Richards did not testify at the trial. Under interrogation by the court when he pleaded guilty to robbery, Richards reluctantly related how he and Kennedy entered the store and that Kennedy carried the gun. This testimony differed from the defendant Kennedy's but, because Richards was not called by the state to testify, counsel was not placed in a situation where his loyalty to one of his clients must suffer. Thus, Kennedy was not prejudiced. Cf. *Craig v. United States,* 217 F.2d 355 (6th Cir. 1954). Kennedy argues, however, that defense counsel's failure to call Richards as an adverse witness indicates that defense counsel did not desire to place himself in the posi-

tion where, in order to advance Kennedy's defense, he must attack the credibility of his other client. Thus, defendant's pro se brief asserts, there is the possibility that Kennedy was actually prejudiced. We disagree because we are convinced that counsel's failure to call Richards as a defense witness was motivated by his loyalty to Kennedy and not by his duty to simultaneously defend two clients. Kennedy's argument assumes that an attorney would call a witness whose testimony is inimical to his client in order that the witness' testimony may be impeached. Such an assumption is unwarranted and therefore fails to create a possibility that Kennedy may have been actually prejudiced.

We have reviewed the defendant's remaining assignments of error and do not find them persuasive.

Affirmed.

PEARSON, C.J., and PETRIE, J., concur.