Fred KELLY, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 62289.

Court of Criminal Appeals of Texas.

Sept. 22, 1982.

Rehearing Denied Nov. 10, 1982.

Nick Warden, McKinney, on appeal only, for appellant.

Tom O'Connell, Dist. Atty., and Bill Schultz, Asst. Dist. Atty., McKinney, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and ROBERTS and McCORMICK, JJ.

## OPINION

ROBERTS, Judge.

The appellant was convicted of aggravated robbery. The trial court assessed punishment at confinement for ten years.

In his first ground of error, the appellant contends that the trial court erred in denying his court-appointed counsel's motion to withdraw and erred in refusing to hold a hearing on the motion.

The motion to withdraw as counsel stated:

"NOW COMES, Richard Abernathy, court appointed attorney for Fred Kelly, Jr., in the above-referenced cause and makes this his motion to withdraw and would show the court the following:

I.

"On July 14, 1978, Richard Abernathy, a licensed attorney in the State of Texas, was appointed by the Honorable John McCraw to Represent Fred Kelly, Jr., in the above-referenced cause.

II.

"Said accused, Fred Kelly, Jr., was arrested on or about April 13, 1978 within the corporate city limits of McKinney, Texas by officers of the McKinney Police Department.

III.

"Said court appointed attorney for the accused is the prosecutor for the Municipal Court of the City of McKinney, Texas. Moreover, a partner in the firm of Abernathy & Roeder, of which said court appointed attorney is associated, serves on the City of McKinney Planning and Zoning Commission. Said relationship with the City of McKinney creates a conflict of interest in said attorney's representation of the accused and respectfully request permission to withdraw as counsel for the accused." (sic)

The motion was filed on July 18, 1978.

On July 21, at a pre-trial hearing, the following occurred:

"THE COURT: ... Mr. Abernathy, I have noted your Motion to Withdraw. Now do you have any specific knowledge of this case, prior to being appointed?

"MR. ABERNATHY: No, sir.

"THE COURT: Do you have any dealings with your defendant regarding this case in your scope of employment, prior to your being appointed?

"MR. ABERNATHY: No, sir.

"THE COURT: I will deny your motion. I will assure you that you will do an adequate job."

On December 6, 1978, after a jury had been empaneled, the following occurred:

"MR. ABERNATHY: I would like to reurge to the court my Motion to Withdraw. I would like for the Court to consider it. I am, at this time, the attorney for the City of McKinney. My partner, who is Bob Roeder, with the law firm of Abernathy & Roeder, is on the Planning and Zoning Commission. I have been City Prosecutor since May or June of 1978, and as such, work very closely with the Police Department in the City of McKinney.

"At this trial today, I feel there is a conflict of interests for the reason that there have been at least five police officers in the McKinney Police Department called to testify. They include Officer Marksberry, Officer Hughes, Officer Young, Officer Honea, or Detective Honea, and Officer Barton. Because of my position with the City of McKinney, and being juxtaposed—anyway, being placed with or against the police officers in the City of McKinney at this time would create a conflict of interests. That being my reason for the objection, I respectfully request the Court's consideration of my Motion to Withdraw.

"MR. SCHULTZ [the prosecutor]: Your Honor, may I ask Mr. Abernathy some questions in connection with this Motion?

"THE COURT: The Court recognizes that Mr. Abernathy is a professional with the McKinney Police Department, and it also recognizes the responsibility of the attorneys, and I think that there would

not be anything—that it would probably benefit him to be able to represent Mr. Kelly.

"MR. SCHULTZ: Your Honor, my question is going to be directed, not in opposition, but perhaps in support of the Motion. From the State's position, I would like to ask Mr. Abernathy one or two questions in that regard, if the Court will permit me.

"THE COURT: Well, after the jury has been selected on this matter, I don't think—at this time it is not a proper time. The Court has made the ruling.

"MR. ABERNATHY: Note our objection.

"THE COURT: So noted.

"MR. SCHULTZ: We support the defense's Motion in this case."

Thus, the record in this case shows that the appellant's attorney recognized and brought to the trial court's attention the potential conflict of interest which existed for him. He did so just four days after receiving the court appointment, and renewed his motion just before trial began. Furthermore, the State joined in the appellant's motion.

The appellant argues that, at the minimum, the trial court should have held a hearing to explore the potential conflict of interest, and determine whether the appellant's counsel could fairly and impartially represent the appellant. We agree.

Canon 5 of the Code of Professional Responsibility (Rules Governing the State Bar of Texas, Article 12, Section 8) states: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." Among the ethical considerations listed under that canon are:

"EC 5–1. The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desire of third persons should be permitted to dilute his loyalty to his client.

\*      \*      \*      \*      \*      \*

"EC 5–14. Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse or otherwise discordant.

"EC 5–15. If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests...."

Among the disciplinary rules under Canon 5 are:

"DR 5–101   Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

"(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property or personal interests.

\*       \*       \*       \*       \*       \*

"DR 5–105   Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

"(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

"(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

"(C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."

Canon 9 of the Code of Professional Responsibility states: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Among the ethical considerations listed under that canon are:

"EC 9–2. Public confidence in law and lawyers may be eroded by irresponsible or improper conduct of a lawyer.... When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession.

\*       \*       \*       \*       \*       \*

"EC 9–6. Every lawyer owes a solemn duty ... to strive to avoid not only professional impropriety but also the appearance of impropriety."

The American Bar Association's Standards Relating to the Defense Function, Standard 4–3.5(d) provides:

"It is unprofessional conduct for a lawyer to defend a criminal case in which the lawyer's partner or other professional associate is or has been the prosecutor."

The commentary following this standard is instructive:

"The particular form of conflict that arises when two lawyers who are associated in the practice of law appear on both sides of a case has been the subject of legislation in many states. These stat-

utes typically make it a misdemeanor and provide for the revocation or suspension of the license of an attorney who in any way participates as a prosecutor and then advises in the defense of the same case.

"A number of courts have imposed professional discipline upon a lawyer who appeared on both sides of the same case, either first as prosecutor and later as defense counsel or first as defense counsel and later as prosecutor. But where the circumstances have shown no division of loyalties, courts have recognized that it is permissible for one who holds prosecutorial office to act as defense counsel in another jurisdiction.

"In all of these situations the controlling consideration is the avoidance of any possibility of division or dilution of loyalties. Relationships between lawyers who are associated in practice are so close and the potential for conflict is so great, given the lack of any strong reason for permitting such representation, that a flat prohibition is warranted against lawyers from the same firm or office appearing as prosecutor and defense counsel. Similarly, it would not be sound to permit one who regularly serves as a prosecutor to appear as defense counsel opposing one who ordinarily is his or her associate in the prosecution office." (footnotes omitted)

American Bar Association Standards for Criminal Justice (2nd Ed.), pp. 4.44–4.45.

The appellant's counsel correctly recognized the potential conflict of interest present in this case. The appellant was arrested by police officers employed by the City of McKinney. As City Attorney for the City of McKinney, the appellant's counsel would be called upon to advise the police department, and, as prosecutor, would have to rely upon the police officers' testimony. However, as the appellant's counsel in this case, he would be expected to vigorously investigate the facts of the case, including interviewing the arresting officers, if possible. He would also be expected to vigorously cross-examine the police officers who would be witnesses for the State, or, if the facts were favorable, call the officers as witnesses for the defense. In addition, as the appellant's counsel, he would be opposing other prosecutors who were normally his colleagues.

In *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the United States Supreme Court explored the risks inherent in the representation of co-defendants and set forth standards for review when those risks were made known to the trial court. The Court stated:

"One principle applicable here emerges from *Glasser* [*v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)] without ambiguity. Requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney; indeed, in some cases, certain advantages might accrue from joint representation. In Mr. Justice Frankfurter's view: 'Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack.' *Glasser v. United States, supra,* at 92, 62 S.Ct., at 475 (dissenting opinion).

"Since *Glasser* was decided, however, the courts have taken divergent approaches to two issues commonly raised in challenges to joint representation where—unlike this case—trial counsel did nothing to advise the trial court of the actuality or possibility of a conflict between his several clients' interests. First, appellate courts have differed on how strong a showing of conflict must be made, or how certain the reviewing court must be that the asserted conflict existed, before it will conclude that the defendants were deprived of their right to the effective assistance of counsel. Compare *United States ex rel. Hart v. Davenport,* 478 F.2d 203 (CA3 1973); *Lollar v. United States,* 126 U.S.App.D.C. 200, 376 F.2d 243 (1967); *People v. Chacon,* 69 Cal.2d 765, 73 Cal.Rptr. 10, 447 P.2d 106 (1968);

and *State v. Kennedy,* 8 Wash.App. 633, 508 P.2d 1386 (1973), with *United States v. Lovano,* 420 F.2d 769, 773 (CA2 1970); see also cases collected in Annot., 34 A.L. R.3d 470, 477–507 (1970). Second, courts have differed with respect to the scope and nature of the affirmative duty of the trial judge to assure that criminal defendants are not deprived of their right to the effective assistance of counsel by joint representation of conflicting interests. Compare *United States v. Lawriw,* 568 F.2d 98 (CA8 1977); *United States v. Carrigan,* 543 F.2d 1053 (CA2 1976); and *United States v. Foster,* 469 F.2d 1 (CA1 1972), with *Foxworth v. Wainwright,* 516 F.2d 1072 (CA5 1975); and *United States v. Williams,* 429 F.2d 158 (CA8 1970).

"We need not resolve these two issues in this case, however. Here trial counsel, by pretrial motions of August 13 and September 4 and by his accompanying representations, made as an officer of the court, focused explicitly on the probable risk of conflict of interests. The judge then failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel. We hold that the failure, in the face of the representations made by counsel weeks before trial and again before the jury was empaneled, deprived petitioners of the guarantee of 'assistance of counsel.'

"This conclusion is supported by the Court's reasoning in *Glasser:*

" 'Upon the trial judge rests the duty of seeing that the trial is conducted with solicitude for the essential rights of the accused. . . . The trial court should protect the right of an accused to have the assistance of counsel. . . .

\*      \*      \*      \*      \*      \*

" 'Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused *by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from* those of his first client, when the possibility of that divergence is brought home to the court.' 315 U.S., at 71, 76, 62 S.Ct., at 465, 467 (emphasis added).

"This reasoning has direct applicability in this case where the 'possibility of petitioners' inconsistent interests' was 'brought home to the court' by formal objections, motions, and defense counsel's representations. It is arguable, perhaps, that defense counsel might have presented the requests for appointment of separate counsel more vigorously and in greater detail. As to the former, however, the trial court's responses hardly encouraged pursuit of the separate-counsel claim; and as to presenting the basis for that claim in more detail, defense counsel was confronted with a risk of violating, by more disclosure, his duty of confidentiality to his clients.

"Additionally, since the decision in *Glasser,* most courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted. See, *e.g., Shuttle v. Smith,* 296 F.Supp. 1315 (Vt.1969); *State v. Davis,* 110 Ariz. 29, 514 P.2d 1025 (1973); *State v. Brazile,* 226 La. 254, 75 So.2d 856 (1954); but see *Commonwealth v. LaFleur,* 1 Mass.App. 327, 296 N.E.2d 517 (1973). In so holding, the courts have acknowledged and given effect to several interrelated considerations. An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' *State v. Davis, supra,* [110 Ariz.] at 31, 514 P.2d, at 1027. Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. *Ibid.* Finally, attorneys are officers of the court, and ' "when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." ' *State v. Brazile, supra,* [226 La.] at 266, 75 So.2d, at 860–861. (Emphasis deleted.) We find these considerations persuasive.

"The State argues, however, that to credit Hall's representations to the trial court would be tantamount to transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict and to appoint separate counsel. In the State's view, the ultimate decision on those matters must remain with the trial judge; otherwise unscrupulous defense attorneys might abuse their 'authority,' presumably for purposes of delay or obstruction of the orderly conduct of the trial.

"The State has an obvious interest in avoiding such abuses. But our holding does not undermine that interest. When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics. Cf. *United States v. Dardi,* 330 F.2d 316 (CA2), cert. denied, 379 U.S. 845, 85 S.Ct. 50, 13 L.Ed.2d 50 (1964); *People v. Kroeger,* 61 Cal.2d 236, 37 Cal.Rptr. 593, 390 P.2d 369 (1964). Nor does our holding preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interests without improperly requiring disclosure of the confidential communications of the client. See *State v. Davis, supra.* In this case the trial court simply failed to take adequate steps in response to the repeated motions, objections, and representations made to it, and no prospect of dilatory practices was present to justify that failure." 435 U.S. 482–487, 98 S.Ct. 1177–1180 (footnotes omitted).

Although the possibilities for conflicts of interest in this case are different from those present in *Holloway* and other cases involving the representation of co-defendants, they are no less weighty. Our overriding concern must be the protection of the constitutional right to the effective assistance of counsel.

■ Because the potential for conflict of interest is very great when an attorney who normally acts as prosecutor is appointed to defend a criminal case, the trial court should be especially sensitive to any indications that the attorney feels divided loyalties. When such indications appear the court should, at the minimum, hold a hearing to explore the conflict and decide whether the attorney should be relieved of his obligation to defend the case, giving due weight to the attorney's own representations.

■ In this case, the State joined the appellant's counsel's motion to withdraw from the case. Indeed, the State sought to spread upon the record the facts which caused the attorney for appellant to seek to withdraw. We hold that the trial court's refusal to hold a hearing on the motion to withdraw was an abuse of discretion.

The State virtually concedes that the trial court should have allowed the appellant's attorney to withdraw. However, the State argues that the trial court's error was harmless since only one police officer was called to testify, and his testimony was limited to showing that the pistol used in this case was a deadly weapon. The argument assumes that a conflict of interest would arise only during the cross-examination of a police officer. As set out above, there are other areas where conflicts of interest can arise in connection with a case like this. Without the facts spread upon the record, we are unable to conclude that these other areas were not as laden with conflict as would have been the cross-examination of police officers who might be witnesses in other cases counsel would be trying.

We turn once again to *Holloway v. Arkansas, supra.* The Court rejected the State's argument that the conviction should not be reversed without a showing of specific harm and prejudice, and held that reversal is automatic whenever a trial court improperly requires joint representation over timely objection. The Court stated:

"Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, in this case it may well have precluded defense counsel for Campbell from exploring the possibility of an agreement to testify for the prosecution,

provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied. The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters.

"Finally, a rule requiring a defendant to show that a conflict of interests—which he and his counsel tried to avoid by timely objections to the joint representation—prejudiced him in some specific fashion would not be susceptible of intelligent, evenhanded application. In the normal case where a harmless-error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury. Compare *Chapman v. California, supra* [386 U.S. 18] at 24–26, 87 S.Ct. [824] at 828–829 [17 L.Ed.2d 705], with *Hamling v. United States,* 418 U.S. 87, 108, 94 S.Ct. 2887, 2902, 41 L.Ed.2d 590 (1974), and *United States v. Valle-Valdez,* 554 F.2d 911, 914–917 (CA9 1977). But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible. Thus, an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation."

435 U.S. at 489–491, 98 S.Ct. at 1181–1182.

For many of the same reasons, we are unwilling to engage in unguided speculation into the type or degree of harm to the appellant in this case. Without a record before us which clearly shows that the trial court's refusal to grant the motion to withdraw was a reasonable exercise of discretion, we will presume that the appellant was harmed and reverse the judgment.

The appellant's remaining grounds of error do not challenge the sufficiency of the evidence. In view of our disposition of the case, we need not address them.

The judgment is reversed, and the cause is remanded for a new trial.

McCORMICK, J., concurs in result.

ONION, P.J., dissents.