113 P.3d 511 (2005)
STATE of Washington, Respondent,
v.
Edward Charles HOWARD, Appellant.
No. 52595-6-I.
Court of Appeals of Washington, Division 1.
June 6, 2005.
*512 David Bruce Koch, Seattle, for Appellant.
E Bradford Bales, King County Prosecuting Attorneys Office, Seattle, Counsel for Respondent.

*513 PUBLISHED IN PART
COX, C.J.
¶ 1 Edward Howard appeals his judgment and sentence for first degree robbery and first degree burglary, each with firearm enhancements. We hold that the trial court did not abuse its discretion by excluding certain "other suspect" evidence that Howard offered. And the exclusion of the name of the alleged other suspect on the basis that it was hearsay was harmless error. We further hold that the absence of a unanimity jury instruction for the burglary charge and the State's failure to elect one of the alternative means of that charge, did not, under these circumstances, deny Howard his right to a unanimous jury verdict.
¶ 2 In addition, Howard has failed to establish that his trial counsel was ineffective. The jury instruction on the firearm enhancement was defective, but that error was harmless beyond a reasonable doubt. Accordingly, we affirm.
¶ 3 Four young men invaded and robbed Jessica Myers' apartment. She knew one of the men, Matthew Montechelle, but had never before seen his accomplices, two African-American males and an Asian-American male.
¶ 4 During the robbery, one of the African-American males was armed with a silver handgun. He punched Myers in the stomach and pushed her on a bed. When he caught Myers looking at him, he put a gun to her head and asked her if she was ready to die. After ransacking the apartment, the men fled with an assortment of DVDs, electronics, money, and other items.
¶ 5 Police arrested Montechelle, who identified the Asian-American male as Robert Lyne and the two African-American males as Reggie Ford and Eddie Howard. Executing a search warrant at Lyne's residence, police recovered a loaded silver .357 Magnum handgun as well as several of the items stolen from Myers' apartment.
¶ 6 Police prepared photographic montages and showed them to Myers. When she saw Howard's photograph, she began shaking and said, "That's him, he's the one that cocked the gun behind my head." Myers also identified Ford's photograph.
¶ 7 The State charged Howard with first degree robbery, second degree assault, and first degree burglary. Each charge included a firearm allegation.
¶ 8 A jury acquitted Howard of the assault charge, but found him guilty of first degree robbery and first degree burglary. The jury also found that he was armed with a deadly weapon for each count.
¶ 9 Howard appeals.

OTHER SUSPECT EVIDENCE
¶ 10 Howard argues that the trial court's exclusion of testimony that another individual named "Smoke Lock" was the fourth participant in the robbery denied him his constitutional right to present a defense. We disagree.
¶ 11 A criminal defendant has a constitutional right to present a defense consisting of relevant, admissible evidence.[1] In order to be relevant, and therefore admissible, the evidence connecting another person with the crime charged must create a train of facts or circumstances that clearly point to someone other than the defendant as the guilty party.[2] The evidence must establish a nexus between the other suspect and the crime.[3] The defendant has the burden of showing that the "other suspect" evidence is admissible.[4] The admission or refusal of evidence lies largely within the sound discretion of the trial court and is reviewed only for an abuse of discretion.[5]

*514 Exclusion of Lyne's Testimony

¶ 12 Howard argues that the court erred in not permitting Lyne to testify for the defense that an individual named "Smoke Lock," and not Howard, was the fourth participant in the robbery. Howard mischaracterizes the trial court's ultimate refusal to permit Lyne's testimony as an improper credibility determination.[6]
¶ 13 Although the court noted that it found Lyne not credible as a matter of law, the permissible basis for the court's ruling was that the nexus between "Smoke Lock" and the crime was insufficient to support admission of "other suspect" evidence.
¶ 14 At a pretrial hearing, the State moved to exclude all evidence of other suspects. As an offer of proof, Howard's counsel informed the court that Lyne would testify that another individual, known as "Smoke Lock," and not Howard, was one of the two African-American males who robbed Myers. Counsel also asserted that Doug Hancock, Lyne's roommate, would corroborate Lyne's testimony.
¶ 15 Lyne testified initially that "Smoke Lock" was the fourth participant in the robbery and that Howard had not been involved. However, Lyne refused to give "Smoke Lock's" real name or any further information about him. Later, Lyne invoked his Fifth Amendment right against self-incrimination, informing the court that if called to testify at trial, his testimony would be materially different from his testimony at the pretrial hearing. This implied that he may have perjured himself during his initial testimony.
¶ 16 Based on the initial testimony, the court ruled that there was sufficient evidence to allow the admission of "other suspect" evidence. However, the testimony of another witness, Hancock, was substantially different than Lyne's. Hancock had not been at the scene of the crime. He was unable to corroborate Lyne's testimony that Eddie Howard had not participated in the crime. At most, Hancock testified that he had seen an unknown African-American male in the company of Lyne, Montechelle, and Ford the morning of the robbery. Though unsure, Hancock testified that the unknown male may have been introduced as "Smoke Lock." The trial court excluded that statement as hearsay.
¶ 17 The court considered the more fully developed recordboth the testimony of Howard and the revised testimony of Lyne  and found there was an insufficient nexus between "Smoke Lock" and the crime. This was a proper exercise of discretion by the court. Howard simply failed to establish sufficient evidence to support his claim that "other suspect" evidence should be admitted. This record does not support that claim.
¶ 18 The defense cites State v. Reed[7] for the proposition that, under the rule announced in State v. Hudlow,[8] "evidence relevant to the defense of an accused will seldom be excluded, even in the face of a compelling state interest."[9]Reed is not helpful here.
¶ 19 That case involved the question of whether there was a need for the State not to disclose the location of a hidden police observation post. This need competed with the defense's right to cross-examine a police officer, the sole witness to the defendant's illegal drug transaction, about the post's location.[10] But our supreme court noted that Reed mistakenly applied the Hudlow rule.[11]Hudlow lays out the "proper method of balancing the defendant's right to produce relevant evidence versus the state's interest in limiting the prejudicial effects of that evidence."[12] However, prior to any balancing analysis under Hudlow, the evidence must be *515 relevant,it must clearly point in this case to someone other than Howard as the guilty party.
¶ 20 Here, the record establishes that the "other suspect" evidence was insufficient to be admissible. The court did not abuse its discretion in refusing to allow Lyne to testify once the record was more fully developed.

Impeachment with Prior Testimony
¶ 21 Howard claims that the trial court abused its discretion when it refused to permit Howard to call Lyne as a witness in order to impeach him with his prior testimony. Howard contends that the rules generally applicable to impeachment do not apply in this case. Specifically, he contends the rule discussed in State v. Lavaris,[13] applies only to prosecution attempts to place otherwise inadmissible evidence before the jury under the guise of impeachment. We reject this contention.
¶ 22 ER 607 specifies that any party may impeach any witness. The rule makes no distinction between the defense and the prosecution in criminal cases: "The credibility of a witness may be attacked by any party, including the party calling the witness."[14]
¶ 23 In Lavaris, the court held that in order to prevent abuse of the rule on impeachment, a party could not call a witness as a mere subterfuge to place before the jury evidence not otherwise admissible.[15] While Lavaris dealt with prosecutorial abuse of the rule, Howard cites no cases, and we have found none, that hold that the application of the principle stated in Lavaris is limited to the State. In fact, our court once noted in reference to a hypothetical attempt by the defense that "calling a [defense] witness for the sole purpose of impeaching him is a pointless exercise. If the impeachment would involve use of otherwise inadmissible evidence, it would be improper."[16] The argument that exclusion of such improper evidence is limited to when the State offers such evidence is illogical. The purpose of the rule, regardless of the party against whom it is applied, is to avoid the subterfuge of putting before a jury evidence that is otherwise inadmissible. There is nothing in the language of the cases that suggests that the rule should be selectively applied only against the State.
¶ 24 In construing the identically worded federal rule "it has been held that prosecutorial conduct, in particular, must be carefully scrutinized in order to determine whether abuse of [ER 607] is being attempted or has already occurred."[17] But no federal court has exempted defense conduct from scrutiny. We conclude there is no rationale for doing so.
¶ 25 The trial court did not abuse its discretion in prohibiting Howard from calling Lyne for the sole purpose of placing inadmissible evidence before the jury under the guise of impeachment.

Exclusion as Hearsay of the Name "Smoke Lock"
¶ 26 Howard argues that he had a constitutional right to elicit the name "Smoke Lock" from Hancock, and that, coupled with Lyne's testimony, excluding that testimony as hearsay was constitutional error that is not subject to harmless error analysis. We hold that the exclusion of the name was harmless error.
¶ 27 The Washington Supreme Court has held that "it is a well-known exception to the hearsay rule that evidence as to the name by which a person is known, although it may not be the best evidence as to his true name, cannot be excluded on the *516 ground that it is hearsay."[18] Thus, the trial court's exclusion of the name on the basis of hearsay was incorrect.
¶ 28 Whether this evidentiary error was harmless and what standard is applicable are separate questions. An evidentiary error that does not result in prejudice to the defendant is not grounds for reversal.[19] Because the error here resulted from violation of an evidentiary rule, not a constitutional mandate, we do not apply the more stringent "harmless error beyond a reasonable doubt" standard.[20] Instead, we apply "the rule that error is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred."[21]
¶ 29 In assessing whether the error was harmless, we must measure the admissible evidence of Howard's guilt against the prejudice, if any, caused by the erroneous exclusion. Here, having heard Hancock's testimony, the court ruled that Hancock was not able to support the defense's "other suspect" theory because Hancock was not at the crime scene and could not place "Smoke Lock" at the crime scene, let alone testify to his participation in the robbery. The court also noted that Hancock was "unable to remember many things."
¶ 30 Hancock's testimony as to the name "Smoke Lock" did not create a nexus between the individual he met and the robbery, nor clearly point out that someone besides Howard may have been the guilty party. Even without the mention of the name "Smoke Lock," Hancock testified that there was a fourth African-American male, who was not Howard, with Lyne, Montechelle and Ford the morning of the robbery, giving the jury the same opportunity to consider the possibility that Howard was not the fourth participant in the crime.
¶ 31 We conclude that the evidentiary error is not prejudicial because the outcome of the trial would not have been materially affected had it not occurred.

UNANIMOUS JURY VERDICT
¶ 32 Howard argues that he was denied his right to a unanimous jury verdict on the first degree burglary charge. We disagree.
¶ 33 "In some circumstances, the constitutional right to jury unanimity includes unanimity as to the means of committing the charged offense."[22] Express unanimity as to an alternate means of committing a crime is unnecessary if sufficient evidence exists to support each of the alternate means presented to the jury.[23] If one or more of the alternative means is not supported by substantial evidence, the verdict will stand only if we can determine that the "verdict was based on only one of the alternative means and that substantial evidence supported that alternative means."[24] Alternative means are repugnant to one another if "proof of one will disprove the other."[25]
¶ 34 The first degree burglary statute, RCW 9A.52.020, states:
(1) A person is guilty of burglary in the first degree if, with intent to commit a *517 crime against a person or property therein, he or she enters or remains unlawfully in a building and if, in entering or while in the building or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person.[[26]]
¶ 35 At issue is the effect in this case of the "enters or remains unlawfully" language in the statute. Howard argues that State v. Klimes[27] establishes that the two alternative means of committing burglary, "unlawfully enters" and "unlawfully remains," are repugnant to one another because the State must first prove that he lawfully entered Myers' apartment in order to prove that he unlawfully remained there. He asserts that there is no evidence of lawful entry in the recordquite the contrarythe entry was unlawful. Myers resisted the invasion and the entry was without her permission.
¶ 36 This court recently rejected a similar argument in State v. Allen, 127 Wash. App. 125, 110 P.3d 849 (2005).[28] We held that "[i]n common factual situations ... a jury instruction requiring the State to prove the defendant entered or remained unlawfully in a building raises no unanimity concerns, even if there is no evidence to support one of the alternative means."[29]Allen disapproved of Klimes' broad assertion that the "enters unlawfully" and "remains unlawfully" means are repugnant to one another.[30]
¶ 37 In Klimes, conflicting evidence as to the means of entry was before the jury. In that case, police responded during regular business hours to investigate a report of a suspicious person in a junkyard. They found Klimes inside the junkyard dismantling a car engine. The police theorized he had entered unlawfully by climbing over the back fence nearby. But Klimes said he entered through the front gate, which was open to the public. In his prosecution for second degree burglary, the prosecutor told the jury during closing that they could convict Klimes even if some of them thought he entered unlawfully while others thought he had entered lawfully, because the lawful entry was rendered unlawful by the intent to commit a crime.[31] This is an incorrect statement of Washington law and courts have repeatedly rejected it.[32]
¶ 38 The jury returned a general verdict of guilt. This court found that, although sufficient evidence supported the unlawful entry alternative, no evidence supported the unlawfully remaining alternative. Because the prosecutor's erroneous characterization of the law increased the possibility of lack of jury unanimity, the Klimes court reversed.[33]
¶ 39 Allen points out that the cases on which Klimes relied[34] illustrate that the application of the unlawful remaining alternative is "intended primarily for situations in which the initial entry to the building is lawful, but the defendant either exceeds the scope of the license or privilege to enter, or the license is impliedly or expressly terminated."[35] These cases however, do not suggest that "unlawful remaining, for the purposes of burglary, occurs only when the initial entry is lawful."[36]
¶ 40 In Allen, the defendant entered three buildings that were partially open to the public, intruded into private areas, and took items belonging to employees. A jury found him guilty of burglary, theft, and possession *518 of stolen property. On appeal, Allen challenged the burglary conviction on the ground that he was denied his right to a unanimous jury verdict because the State did not present sufficient evidence to establish both the "entered unlawfully and the remained unlawfully" means of committing burglary.[37]
¶ 41 This court concluded that given the fact that Allen's initial entry into the buildings was clearly lawful, "a jury instruction requiring the State to prove unlawful entry or remaining raises no unanimity concerns where there is no evidence of unlawful entry, and the lawfulness of the entry is not other wise disputed, because no rational juror could rely on the unlawful entry means to establish burglary."[38] Accordingly, these factors alone did not create a unanimity problem.
¶ 42 This case presents the other "common situation" discussed in Allen.[39] The entry here was clearly unlawful, and the unlawfulness of the entry is not otherwise disputed.[40] Howard cannot be said to have been licensed or privileged to be in the home at all. Likewise, it is undisputed that Howard and the others "stayed there for up to thirty minutes" without Myers' permission. "Consequently, the defendant's continuing presence in the building satisfies the statutory definition of unlawful remaining."[41]
¶ 43 At trial, the "to convict" instruction on the burglary charge employed language containing both means, phrased in the disjunctive: "A person is guilty of burglary ... if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building..."[42] There was no Petrich[43] instruction to the jury. Nor did the State elect one of the two means on which to rely. Rather, the State took the position that Howard both unlawfully entered and unlawfully remained after the unlawful entry.
¶ 44 In closing argument, the State's position was that unlawfully remaining could follow an unlawful entry.
. . .[T]o convict the defendant of the crime of Burglary in the First Degree ... the defendant or an accomplice entered or remained unlawfully in a building. That the entering or remaining was with the intent to commit a crime. . . [a]nd that in so entering or while in the building or in the immediate flight from the building the defendant ... was armed with a deadly weapon[.]
¶ 45 This argument is consistent with Allen's reading of the burglary statute.[44]
"[E]ven if unlawful remaining means is confined to situations where an initial entry is lawful, and the jury is instructed that the State must prove unlawful entry or remaining, there will generally be no prejudice to the defendant's right to a unanimous jury where the evidence establishes only an unlawful entry, because no rational juror could rely on the unlawful remaining means without necessarily also finding that the entry was unlawful. In such circumstances, the court can be certain that the verdict was unanimous."[[45]]
¶ 46 In Allen, we rejected the notion, asserted here by Howard, that State v. Collins and State v. Thomson, require that lawful entry is a necessary predicate for unlawful remaining.[46] Both of those cases dealt with situations where the defendant's initial entry was lawful. Collins was invited into a home *519 and then assaulted the two occupants.[47] Unlawful entry was not an issue in his burglary trial and the Collins court concluded that, for purposes of the burglary statute, he had unlawfully remained in the home when he exceeded the implied scope of his invitation.[48]
¶ 47 In Thomson, the defendant appealed his conviction for first degree rape, which required proof of unlawful entry into a building.[49] Thomson had been invited to spend the night in a guest room but during the night he broke into the victim's bedroom and assaulted her.[50] In concluding that breaking into the bedroom did not constitute unlawful entry into a building, the court distinguished unlawful (felonious) entry from unlawful (felonious) remaining. Citing Collins, it stated that the burglary statute shows "that felonious remaining occurs when ... a person has lawfully entered a building pursuant to an invitation, license, or privilege . . . ."[51]
¶ 48 Given the facts of that case, we do not read Thomson to hold that unlawfully remaining can only follow a lawful entry. To the extent that it does so hold, we disagree with it.
¶ 49 Here, the two alternative means of committing burglary are not repugnant to one another, because proof of an unlawful entry does not disprove the charge of unlawful remaining. The overwhelming evidence in this case showed that Howard's entry into Myers' apartment was unlawful, and was followed by a period of at least 30 minutes in which he remained without Myers' permission. Ample evidence supported both alternative means.
¶ 50 We therefore hold that there was no violation of Howard's right to jury unanimity.

FIREARM ENHANCEMENT JURY INSTRUCTION
¶ 51 Howard also argues that the jury instruction on the firearm enhancement allegation failed to include a nexus requirement and the omission constituted reversible error.[52] The State concedes the omission but argues that the error was harmless under the constitutional standard. We agree.
¶ 52 A firearm enhancement requires proof that a nexus existed between the defendant, the weapon, and the crime.[53] An omission or misstatement of the law in a jury instruction that relieves the State of its burden to prove every element of the crime charged is erroneous.[54] However, not every omission or misstatement relieves the State of its burden. An erroneous jury instruction that omits an element of the charged offense or misstates the law is subject to harmless error analysis.[55] On appeal, the error will be held harmless if, after reviewing the record, the court concludes "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."[56]
¶ 53 Here, under a constitutional harmless error test, there was overwhelming evidence that a nexus existed between the firearm and the crimes. Myers, Ford, and Montechelle all testified that a silver handgun was used in the commission of the offenses. Howard held the handgun to Myers' *520 head and to her child's neck during the assault and robbery. Police recovered the handgun used in the assault and robbery, and the State introduced the gun into evidence without objection.
¶ 54 Howard cites State v. Holt,[57] a case from another division of this court, for the proposition that harmless error analysis is inapplicable to the failure to include a nexus requirement to firearm enhancement instructions.[58]Holt is unpersuasive. Holt relies on State v. Eastmond,[59] a case which predates both Brown and Neder. The Holt court addresses neither of these latter cases, nor makes any attempt to distinguish another decision from that division, State v. Jennings,[60] which acknowledged that Neder had unsettled the "automatic reversible error" rule in Eastmond. Accordingly, we adhere to the supreme court's more recent rulings and conclude that harmless error may and does apply here.
¶ 55 We affirm the first degree robbery and first degree burglary convictions and the sentencing enhancements.
¶ 56 The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.
SCHINDLER and APPELWICK, JJ., concur.
NOTES
[1] State v. Rehak, 67 Wash.App. 157, 162, 834 P.2d 651 (1992), review denied, 120 Wash.2d 1022, 844 P.2d 1018, cert. denied, 508 U.S. 953, 113 S.Ct. 2449, 124 L.Ed.2d 665 (1993).
[2] State v. Maupin, 128 Wash.2d 918, 928, 913 P.2d 808 (1996).
[3] State v. Condon, 72 Wash.App. 638, 647, 865 P.2d 521 (1993), review denied, 123 Wash.2d 1031, 877 P.2d 694 (1994).
[4] State v. Pacheco, 107 Wash.2d 59, 67, 726 P.2d 981 (1986).
[5] Rehak, 67 Wash.App. at 162, 834 P.2d 651.
[6] State v. Snider, 70 Wash.2d 326, 327, 422 P.2d 816 (1967) ("It is the function and province of the jury to weigh the evidence, to determine the credibility of the witnesses, and to decide the disputed questions of fact.").
[7] 101 Wash.App. 704, 6 P.3d 43 (2000).
[8] 99 Wash.2d 1, 15, 659 P.2d 514 (1983).
[9] Reed, 101 Wash.App. at 715, 6 P.3d 43.
[10] Reed, 101 Wash.App. at 708, 6 P.3d 43.
[11] See State v. Darden, 145 Wash.2d 612, 622, 41 P.3d 1189 (2002).
[12] Hudlow, 99 Wash.2d at 16, 659 P.2d 514 (excluding rape victim's prior sexual history) (emphasis added).
[13] State v. Lavaris, 106 Wash.2d 340, 721 P.2d 515 (1986).
[14] ER 607 (emphasis added).
[15] Lavaris, 106 Wash.2d at 344-45, 721 P.2d 515.
[16] State v. Martinez, 53 Wash.App. 709, 716 n. 1, 770 P.2d 646 (1989) (citing Lavaris, 106 Wash.2d 340, 721 P.2d 515 and State v. Kennedy, 8 Wash. App. 633, 638-39, 508 P.2d 1386 (1973)) (emphasis added).
[17] 89 A.L.R. Fed. 13, 1988 WL 546704 (emphasis added); see United States v. Gorny, 732 F.2d 597 (1984).
[18] State v. Siverly, 140 Wash. 58, 60, 248 P. 69, 70 (1926).
[19] Brown v. Spokane County Fire Protection Dist. No. 1, 100 Wash.2d 188, 196, 668 P.2d 571 (1983).
[20] See State v. Cunningham, 93 Wash.2d 823, 831, 613 P.2d 1139 (1980); State v. Tharp, 96 Wash.2d 591, 599, 637 P.2d 961 (1981).
[21] State v. Bourgeois, 133 Wash.2d 389, 403, 945 P.2d 1120 (1997) (citing Tharp, 96 Wash.2d at 599, 637 P.2d 961).
[22] State v. Allen, 127 Wash.App. 125, 110 P.3d 849 (2005) (citing State v. Ortega-Martinez, 124 Wash.2d 702, 707, 881 P.2d 231 (1994)).
[23] Ortega-Martinez, 124 Wash.2d at 707-08, 881 P.2d 231.
[24] State v. Rivas, 97 Wash.App. 349, 351-52, 984 P.2d 432 (1999); see also State v. Bland, 71 Wash.App. 345, 354, 860 P.2d 1046 (1993) ("If one of the alternative means upon which a charge is based fails and there is only a general verdict, the verdict cannot stand unless the reviewing court can determine that the verdict was founded upon one of the methods with regard to which substantial evidence was introduced.") (citations omitted).
[25] State v. Arndt, 87 Wash.2d 374, 383, 553 P.2d 1328 (1976).
[26] (Emphasis added.)
[27] State v. Klimes, 117 Wash.App. 758, 770, 73 P.3d 416 (2003) (dealing with the elements of second degree burglary).
[28] 127 Wash.App. 125, ___, 110 P.3d 849.
[29] Allen, 127 Wash.App. 125, ___ _ ___, 110 P.3d 849.
[30] Allen, 127 Wash.App. 125, ___, 110 P.3d 849.
[31] Klimes, 117 Wash.App. at 763-64, 73 P.3d 416.
[32] Klimes, 117 Wash.App. at 771, 73 P.3d 416; see also State v. Miller, 90 Wash.App. 720, 725-27, 954 P.2d 925 (1998).
[33] Klimes, 117 Wash.App. at 770-71, 73 P.3d 416.
[34] State v. Collins, 110 Wash.2d 253, 751 P.2d 837 (1988); State v. Thomson, 71 Wash.App. 634, 861 P.2d 492 (1993).
[35] Allen, 127 Wash.App. 125, ___, 110 P.3d 849.
[36] Allen, 127 Wash.App. 125, ___, 110 P.3d 849.
[37] Allen, 127 Wash.App. 125, ___, 110 P.3d 849.
[38] Allen, 127 Wash.App. 125, ___, 110 P.3d 849 (emphasis in original).
[39] Allen, 127 Wash.App. 125, ___, 110 P.3d 849.
[40] Appellant's Brief at 37.
[41] Allen, 127 Wash.App. 125, ___, 110 P.3d 849.
[42] RCW 9A 52.020 (emphasis added).
[43] State v. Petrich, 101 Wash.2d 566, 572, 683 P.2d 173 (1984).
[44] Allen, 127 Wash.App. 125, ___, 110 P.3d 849 (agreeing with the analysis of a comparable burglary statute in State v. Rudolph, 970 P.2d 1221, 1229 (Utah 1998)).
[45] Allen, 127 Wash.App. 125, ___, 110 P.3d 849.
[46] Allen, 127 Wash.App. 125, ___, 110 P.3d 849.
[47] Collins, 110 Wash.2d at 254-55, 751 P.2d 837.
[48] Collins, 110 Wash.2d at 254, 751 P.2d 837.
[49] Thomson, 71 Wash.App. at 636, 861 P.2d 492.
[50] Thomson, 71 Wash.App. at 636, 861 P.2d 492.
[51] Thomson, 71 Wash.App. at 640, 861 P.2d 492.
[52] The instruction read: For purposes of a special verdict, the State must prove beyond a reasonable doubt that the defendant was armed with a firearm at the time of the commission of the crimes in Counts 1, 2, and 3. A firearm is a weapon or device from which a projectile may be fired by an explosive such as gunpowder. If one participant in a crime is armed with a firearm, all accomplices to that participant are deemed to be so armed, even if only one firearm is involved.
[53] State v. Schelin, 147 Wash.2d 562, 574, 55 P.3d 632 (2002).
[54] State v. Brown, 147 Wash.2d 330, 339, 58 P.3d 889 (2002).
[55] State v. Thomas, 150 Wash.2d 821, 844-45, 83 P.3d 970, 982 (2004); Neder v. United States, 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); Brown, 147 Wash.2d at 339, 58 P.3d 889.
[56] In re Smith, 117 Wash.App. 846, 73 P.3d 386 (2003); Accord Thomas, 150 Wash.2d at 844-45, 83 P.3d 970 (citations omitted).
[57] 119 Wash.App. 712, 82 P.3d 688 (2004).
[58] Holt, 119 Wash.App. at 728, 82 P.3d 688 (failure was "fatal error requiring reversal regardless of the strength of the evidence on the point").
[59] 129 Wash.2d 497, 919 P.2d 577 (1996).
[60] 111 Wash.App. 54, 44 P.3d 1 (2002), review denied, 148 Wash.2d 1001, 60 P.3d 1212 (2003).