**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Virgil V. KELLER and Alice I. Keller, Defendants-Appellants.**

No. 74–3087.

United States Court of Appeals, Ninth Circuit.

Sept. 17, 1975.

Rehearing Denied Oct. 23, 1975.

Douglas A. Wilson (argued), Wilson, Flower & Sullivan, Yakima, Wash., for defendants-appellants.

Carroll D. Gray, Asst. U. S. Atty. (argued), Spokane, Wash., for plaintiff-appellee.

## OPINION

Before WRIGHT and CHOY, Circuit Judges, and PLUMMER,* District Judge.

CHOY, Circuit Judge:

Appellants Alice and Virgil Keller were convicted by a jury on three counts of wilfully and knowingly attempting to evade income taxes, for the years 1967, 1968, and 1969, in violation of 26 U.S.C. § 7201. We reverse as to the 1967 count and affirm as to the 1968 and 1969 counts.

The Kellers owned and operated two drive-in restaurants and a catering business in Yakima, Washington. They also dealt in a few real estate transactions. Although their businesses were profitable and their financial affairs were expanding, they paid no taxes during any of those three years. Eventually coming under the scrutiny of the Internal Revenue Service (I.R.S.), they were subjected to investigation by the "net worth" method because they supplied incomplete financial records.

Under the net worth method, the taxpayer's total assets and liabilities as of December 31 each year are determined to yield the taxpayer's net worth. When done at successive yearly intervals, annual net worth increases or decreases are shown. Using the annual net worth fig-

* The Honorable Raymond E. Plummer, United States District Judge, District of Alaska, sitting by designation.

ures, with due allowance for amounts spent on living expenses and deductible items, I.R.S. agents recompute the taxpayer's tax liability. If the resulting figure for any year is substantially larger than the taxable income reported by the taxpayer on his tax return, the Government may charge tax evasion, making an inference of wilfulness.

I.R.S. agents Costan and Turk constructed the following net worth computations for the Kellers.

|  | 12-31-66 | 12-31-67 | 12-31-68 | 12-31-69 |
|---|---|---|---|---|
| total assets | $94,368 | $219,981 | $263,320 | $380,571 |
| total liabilities | 66,685 | 164,523 | 177,273 | 255,592 |
| net worth | 27,683 | 55,458 | 86,046 | 124,978 |
|  |  | (27,683) | (55,458) | (86,046) |
| increase in net worth (amount included for living expenses not shown) |  | $ 27,775 | $ 30,587 | $ 38,932 |

Deducting depreciation, exclusions, exemptions, and deductions yielded taxable income in the amounts of:

$ 14,955  $ 22,014  $ 29,686

The Kellers had reported respectively for taxable income·

$ 632  $ 414  $ 0

### Values Allowed For Two Residences

■ Appellants allege error concerning the values allowed them for two residences that they held on December 31, 1966 and traded-in in 1967 for their second restaurant. The I.R.S. allowed bases of $16,000 and $42,000 for the two properties, which had been the original purchase prices paid by the Kellers some years before. The Kellers maintained that the values were $20,000 higher due to improvements and furniture they had put into both houses. If these improvements and furnishings existed as the Kellers claim, the December 31, 1966 assets would be increased to the point that the tax liability for 1967 would disappear.

The record shows that the I.R.S. agents credited the Kellers with no basis for any furnishings or improvements and that the agents had not made a reasonable investigation into these matters. The Kellers gave leads whereby the agents could have investigated the exist-

ence of the furniture and the improvements. Photostats of the Kellers' checks for these years were available from the local bank. Payments by an insurance company and a fire loss statement on the 1965 tax return indicate that there existed at least $15,800 in furnishings. A realtor itemized a long list of furniture in 1967. The buyer of the two residences credited the Kellers with the approximate increased values which the Kellers claim, but which the I.R.S. denies. When the I.R.S. sets a taxpayer's return aside and constructs a new return for him, it assumes the burden of proving, beyond a reasonable doubt, that the items contained therein are true. *Lenske v. United States*, 383 F.2d 20, 25 (9th Cir. 1967). In proving the new return, the I.R.S. must investigate leads reasonably susceptible of being checked. *Holland v. United States*, 348 U.S. 121, 135, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Because the Government failed to pursue leads which were reasonably susceptible of being checked, the opening net worth for 1967 was not reasonably certain and the evidence as to the 1967 count was insufficient to go to the jury. That count should have been dismissed.

### Recall of Witness

■ Mrs. Keller testified concerning the furniture in the house and its approximate value. At the close of trial, defense counsel sought to recall Mrs. Keller to clarify several furniture expenditures and introduce receipts and other supporting documentary evidence which she had just discovered. The court did not allow her to be recalled, and only part of the documentary evidence was admitted. We find that the court abused its discretion in refusing to allow Mrs. Keller to retake the stand.

■ The defendant in a net worth prosecution is ensnared in a system which is difficult to refute. *Holland v. United States*, 348 U.S. at 129, 75 S.Ct. 127. The trial court should not be unduly restrictive when the defendant tries to meet the mass of technical evidence adduced by the Government. We ac-

knowledge the wide latitude allowed the trial court in permitting the recall of a defendant and in excluding cumulative evidence. But when the court restricts the admission of newly-found documentary evidence and prevents the itemization, receipt by receipt, of expenditures completely denied by the Government, it cannot be said that the jury's verdict would have been the same and that the defendants were not denied an essential part of their defense. This error, however, only affected the 1967 count.

### Carryover of 1967 Errors

It must be recognized that a separate net worth analysis, and a separate indictment, is made for each year. The compilations of net assets on December 31 of each year are also distinct from one another, and are interrelated only to the extent that an asset carries through, or credits and losses can be carried over. It follows, then, that an accounting error in one net worth compilation does not affect analysis for the succeeding year unless the error concerns an asset that is present in both years or credit or loss carryovers.

The errors noted as to the 1967 count do not carry through into the later years. The uncertainty in the December 31, 1966 net worth and the excluded testimony related only to the issue of what furniture and improvements were present in the Kellers' two houses. During 1967 these houses were traded in for the Kellers' second restaurant, which had an undisputed value of $110,000. For the Kellers the houses were no longer present on December 31, 1967, and whatever worth they had was replaced by the restaurant. It is the restaurant that was carried on the new assets list and was used for the 1968 and 1969 net worth computations. It is plain that the 1968 and 1969 indictments are unaffected by the errors relating to the houses.

### Other Alleged Errors

The 1968 and 1969 net worth computations being otherwise valid, we turn to the few remaining errors alleged by the Kellers as affecting these later years: failure by the I.R.S. to consider carryovers of income taxes withheld in 1967, investment credit carryovers and capital loss carryovers; and failure to deduct from the 1969 net worth the sum of checks outstanding as of the close of 1969. Without resolving these errors, we note that, even favorably disposed to appellants, they amount to no more than one-tenth of the understatement shown by the Government for the years 1968 and 1969. The Government is not required to prove its case to a mathematical certainty. This would be particularly unfair because tax evaders' surreptitious dealings create a barrier to such exactitude. *United States v. Calderon*, 348 U.S. 160, 167, 75 S.Ct. 186, 99 L.Ed. 202 (1954). *Olender v. United States*, 237 F.2d 859, 867 (9th Cir. 1956). An understatement of taxable income of over $20,000 having been proven for each of 1968 and 1969, the evidence was clearly sufficient to sustain the verdict as to the 1968 and 1969 counts.

The conviction on the 1967 count is reversed. The convictions on the 1968 and 1969 counts are affirmed.