[No. 18105–0–I.   Division One.   May 16, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. SHANE LYNN HATFIELD, *Appellant.*

*Dori Jones* and *Marc Lampson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Deborah J. Phillips, Senior Appellate Attorney,* and *Anne Bremner, Deputy,* for respondent.

PEKELIS, J.—Shane Lynn Hatfield, a juvenile, appeals from a disposition order finding him guilty of assault in the second degree. He contends that he was denied the effective assistance of counsel and that he had a right to a jury trial.

I

Hatfield was charged by information with one count of second degree assault in connection with a rock throwing incident which occurred on October 13, 1985. At a fact–finding hearing on February 27, 1986, Hatfield's attorney, Catherine Airola of the Public Defender Association, moved to withdraw because of a perceived conflict of interest. As she explained to the court, Airola had learned 2 days earlier that a key witness in the case, Andre Anderson, was repre- sented in a different matter by another attorney from the Public Defender Association.

The State opposed the motion to withdraw, arguing that it was untimely and that there was no showing of an actual conflict of interest. The court denied the motion, but appointed another attorney, not connected with the Public Defender Association, to advise Anderson of his privilege against self–incrimination. In the court's view, this step resolved any potential conflict of interest.

The victim of the assault identified Hatfield as the per- son who hit him in the face with a rock. Hatfield, on the other hand, testified that it was Andre Anderson who threw the rock. Meanwhile, Anderson himself had been advised

not to testify and was allowed to invoke his privilege against self–incrimination. Hatfield was found guilty as charged.

## II

Hatfield first contends that he was denied the effective assistance of counsel because his attorney was forced to go to trial with a conflict of interest. The constitutional right to counsel includes the right to representation which is free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981); *see also Holloway v. Arkansas,* 435 U.S. 475, 481–82, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978) (citing *Glasser v. United States,* 315 U.S. 60, 70, 86 L. Ed. 680, 62 S. Ct. 457 (1942)). Although cases involving attorney conflicts of interest most often arise in the context of joint representation of codefendants, it is "self–evident" that simultaneous representation of a defendant and a witness with opposing interests can give rise to a conflict which implicates the right to counsel. *In re Richardson,* 100 Wn.2d 669, 677, 675 P.2d 209 (1983).

Two basic rules emerge from cases involving claims of ineffective assistance of counsel due to attorney conflicts of interest. *See Richardson,* 100 Wn.2d at 677. First, if the trial court knows or reasonably should know of a potential conflict of interest, then it has an affirmative duty to determine whether a conflict actually exists. *Wood,* 450 U.S. at 272–73; *Holloway,* 435 U.S. at 484; *Richardson,* 100 Wn.2d at 677. If the court fails to inquire, then reversal is required. *Richardson,* 100 Wn.2d at 677; *see also Wood,* 450 U.S. at 272–74; *Holloway,* 435 U.S. at 487–91. Second, reversal is always required where a defendant shows that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980); *Richardson,* 100 Wn.2d at 677. In neither case must the defendant show that he was prejudiced. *Richardson,* 100 Wn.2d at 677; *see also Cuyler,* 446 U.S. at 349–50; *Holloway,* 435 U.S. at 487–91.

## A
### POTENTIAL CONFLICT OF INTEREST

In this case, the trial court was made aware by defense counsel of a potential conflict of interest. Defense counsel informed the court that Anderson was a key witness who could possibly be charged with the crime, and that he was represented in a different matter by another attorney from the Public Defender Association. According to defense counsel, a conflict arose out of the inability of Anderson's attorney to advise him, under these circumstances, of his privilege against self–incrimination. As defense counsel explained:

> Ms. AIROLA: It's Andre Anderson who is the person with the problem . . . He is prepared to testify, and he is represented by another attorney at the Public Defender's Association, Bailey DeIongh, and there is a conflict, your Honor . . .

The court inquired into this potential conflict, and determined that it could be resolved by appointing another attorney, not connected with the Public Defender Association, to advise Anderson of his privilege against self–incrimination. The following colloquy took place:

> THE COURT: What we are faced with is if Anderson were not called, were not a witness in the matter, there would be no conflict. Is that the situation?
>
> Ms. AIROLA: Yes, your Honor, except he is an essential witness in this case, and I think—
>
> THE COURT: Okay, but he may not be available no matter what lawyer represents him. I think the answer—
>
> Ms. AIROLA: He is available though, your Honor. He is here in the courtroom.
>
> THE COURT: He would not be available if he were represented by a lawyer other than Ms. DeIongh and she, in representing him, invoked the Fifth Amendment. He would not be available, no matter how essential he is. Now, I think the way out of the possible dilemma, I say possible because I would sense Anderson, apparently, is not charged or ready to go to trial. It might be the better way out to have him have a new lawyer, then we have no conflict and if the lawyer, who is not in conflict, not the

same member of your firm, invokes the privilege and the Court would have to recognize his privilege.

Defense counsel gave no indication that the court's resolution of the potential conflict was in any way inadequate. She stated that "It's Andre Anderson who is the person with the problem," and she agreed that if Anderson were not a witness, there would be no conflict. We find, therefore, that the trial court did not fail to make adequate inquiries into the potential conflict brought to his attention by defense counsel.

## B

### ACTUAL CONFLICT OF INTEREST

On appeal, however, Hatfield argues that his attorney had an actual conflict of interest which was not resolved by the appointment of another attorney for Anderson. RPC 1.7(b) provides that, as a general rule, "[a] lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client". In evaluating possible conflicts of interest, the members of a law firm are generally treated as a single attorney. RPC 1.10(a); 2 W. LaFave & J. Israel, *Criminal Procedure* § 11.9, at 76 n.2 (1984). In this case, Hatfield argues, the Public Defender Association owed a duty of loyalty both to Hatfield and to Anderson.[1] The interests of those two clients were adverse, since Hatfield had a demonstrated interest in blaming the assault on Anderson, while Anderson had an obvious interest in avoiding the blame. Hatfield argues that under these circumstances the Public Defender Association's duty to each client would of necessity be limited by its duty to the other.

Assuming arguendo that Anderson was, in fact, a client of the Public Defender Association and that this would

---

[1] A lawyer's duty of loyalty to her client extends beyond the particular matter in which the lawyer represents that client. "Thus, a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." ABA Model Rules of Professional Conduct, Rule 1.7 comment.

constitute an actual conflict of interest, it does not in itself establish that Hatfield was denied the effective assistance of counsel. Hatfield's argument rests on the mistaken assumption that when counsel is burdened by an actual conflict of interest, his client has been prejudiced per se, and his conviction should be reversed. However, the rule in conflict cases is "not quite the *per se* rule of prejudice that exists for [other] Sixth Amendment claims". *Strickland v. Washington,* 466 U.S. 668, 692, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Rather, "[p]rejudice is presumed only if the defendant demonstrates that counsel '*actively* represented conflicting interests' and that 'an actual conflict of interest *adversely affected* his lawyer's performance.'" (Italics ours.) *Strickland,* 466 U.S. at 692 (quoting *Cuyler,* 446 U.S. at 348, 350); *see also Richardson,* 100 Wn.2d at 677. In this case, Hatfield has demonstrated neither.

First, Hatfield does not even argue that his attorney actively represented Anderson's interests. He has failed to identify a single act or omission on the part of his attorney which would suggest that she was caught in a "'struggle to serve two masters".[2] *Cuyler,* 446 U.S. at 349 (quoting *Glasser,* 315 U.S. at 75). On the contrary, the record affirmatively demonstrates that the actions of Hatfield's attorney were not guided by any loyalty to Anderson. She even went so far as to argue in closing that Anderson should be presumed guilty because he invoked his Fifth Amendment privilege.

Second, Hatfield does not allege or attempt to show that his attorney's performance was adversely affected by the alleged conflict or, in fact, that it was *defective* in any way. Our own review of the record reveals no indication that the quality of Hatfield's representation was deficient.[3] Rather,

---

[2]The colloquy cited above clearly indicates that Hatfield's attorney was unaware that she would owe any further duty to Anderson if he were not a witness.

[3]In all the cases cited by Hatfield or uncovered by our own research, it is an apparent deficiency in counsel's performance that gives rise to the suspicion that

it appears that Hatfield's attorney presented an aggressive and vigorous defense on her client's behalf.

Because Hatfield does not even allege that his counsel "actively represented conflicting interests" or that the actual conflict "adversely affected" his attorney's performance, we cannot presume prejudice. Thus, Hatfield fails to establish an ineffective assistance of counsel claim. *See Cuyler,* 446 U.S. at 348–50.

### III

Hatfield also contends that he had a right to a jury trial and that he was denied that right. RCW 13.04.021(2) provides that cases in the juvenile court shall be tried without a jury. In *State v. Lawley,* 91 Wn.2d 654, 591 P.2d 772 (1979) our Supreme Court upheld the constitutionality of RCW 13.04.021(2) against a challenge based on the sixth amendment to the United States Constitution and article 1, section 22 of our state constitution. Hatfield argues that because of developments in the law subsequent to *Lawley,* both these provisions now require a jury trial in juvenile proceedings. He also argues that RCW 13.04.021(2) offends the equal protection provisions of both the state and federal constitutions.

Both these issues were recently disposed of in *State v. Schaaf,* 109 Wn.2d 1, 743 P.2d 240 (1987), decided after Hatfield's brief was filed. RCW 13.04.021(2) does not violate the jury trial or equal protection provisions of the state or federal constitutions. *Schaaf,* 109 Wn.2d at 4, 17.

---

it was a conflict of interest that caused the attorney to fail in his duty to the client. *See, e.g., Wood v. Georgia,* 450 U.S. 261, 267–68, 271–72, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981) (attorney failed to urge the court to be lenient in imposing fines); *In re Richardson,* 100 Wn.2d 669, 671–72, 675 P.2d 209 (1983) (attorney failed to question defense witness, also his client, about illegal activities undertaken on behalf of State's chief witness). This is, no doubt, because without an assertion that counsel's performance was deficient, it is impossible to demonstrate that counsel's conflict "adversely affected" counsel's performance.

Affirmed.

SCHOLFIELD, C.J., and WINSOR, J., concur.