[No. 19669-3-I.   Division One.   March 27, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. EDWARD J. MARTINEZ, *Appellant.*

PEKELIS, J., dissents by separate opinion.

710

*Lenell Nussbaum* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney, Ronald Hardesty, Special Deputy,* and *Mac D. Setter, Deputy,* for respondent.

SCHOLFIELD, J.—The defendant, Edward J. Martinez, appeals from his conviction for second degree burglary. We affirm.

## FACTS

During the early morning hours of September 13, 1986, Bellingham city police officers Lampman and Livesey responded to a burglary alarm at the Bellingham National Bank. When they arrived, they observed two individuals in the bank. One was a young man (juvenile) crawling across the floor of the bank who stood up when he saw an officer looking at him and walked over to the door and waited for the police. The other was a short male with dark hair wearing a blue jacket. Both officers observed this individual run past the juvenile and up the stairs in the bank. Officer Lampman next heard the loud banging and crashing noise of venetian blinds being cast aside as someone went out of a window. Approximately 10 seconds later, both officers saw on the awning outside of the second floor of the bank an individual who was dressed and looked like the man who had gone up the stairs. Ultimately, the individual on the awning, Martinez, was removed from the awning, arrested and searched. During the search, Officer Lampman found a small pipe tool on Martinez. A bank employee testified that

he kept in his desk a pipe tool similar to the one found on Martinez and, although the employee had not used it for several months, he had noticed on the morning of trial that it was no longer in his desk.

Martinez testified that he had not been in the bank on the morning of September 13, 1986. He claimed that he had been drinking wine with the juvenile on the roof of the Penney's building next door to the bank and that after two drinks of wine he passed out. Martinez also testified that he had undergone back surgery approximately 6 weeks prior to the incident, that the juvenile had to "lift" him up on the roof, and that he was taking prescribed medication. Additionally, Martinez testified that the pipe tool had not been found on him, that it had not been in his pockets, and that he did not know of any reason Officer Lampman might have to plant the pipe tool on him or to lie about seeing him in the bank.

At trial, Martinez was represented by Jon Komorowski of the Whatcom County Public Defender's Office. At that time, the juvenile found in the bank was also being represented by the Whatcom County Public Defender's Office. During trial, Martinez indicated to Komorowski that he wanted to call the juvenile as a witness. Court was then recessed to allow Komorowski to locate the juvenile. When court reconvened, Komorowski told the court that the juvenile had been located, but would not be available until the next morning. Court was then recessed until the next morning to allow Komorowski to speak with the juvenile to learn the substance of his potential testimony and to allow the juvenile to speak with his attorney about whether he should testify.

The following morning, Komorowski advised the court that he had spoken with the juvenile, in the presence of his attorney, and based upon this conversation he would not be calling the juvenile to testify. Komorowski then indicated that Martinez desired to address the court. Martinez indicated to the court that he wanted to review his testimony and explain his position. Komorowski advised Martinez to

make an offer of proof and briefly explained the procedure. Martinez then told the court that he "hope[d]" to prove that the two officers were wrong and also "hope[d]" to prove that the juvenile was lying. According to Martinez, he had been informed by his attorney that the juvenile would testify that Martinez had been in the bank, but that previously the juvenile had said that he "didn't know anything about the case". Martinez indicated that he would "[l]ike [the juvenile to come in and testify" about this change in his story. The court treated this as a request to subpoena the juvenile and denied the motion.

Martinez then indicated that he wanted to reopen his own testimony to "clear up some other things". This included testimony about a civil action he had against the Bellingham Police Department, that he had been released from the hospital a short time prior to the incident and could not have been doing the climbing and running that the police officers testified to, and that there was a possibility that the pipe tool had been planted on him. The trial court treated this as a motion to reopen his testimony, and this motion was also denied.

On November 4, 1986, Martinez was found guilty of second degree burglary as charged and was subsequently sentenced to 90 days in the Whatcom County Jail. This appeal timely followed.

## EFFECTIVE ASSISTANCE OF COUNSEL

The first issue on appeal is whether Martinez was denied effective assistance of counsel due to a conflict of interest arising from the public defender's office representing both Martinez and the juvenile.

There are two rules to be applied when a defendant is alleging ineffective assistance of counsel due to a conflict of interest by his attorney:

First, a trial court commits reversible error if it knows or reasonably should know of a particular conflict into

which it fails to inquire. Second, reversal is always necessary where a defendant shows an actual conflict of interest adversely affecting his lawyer's performance. In neither situation need prejudice be shown.

*In re Richardson,* 100 Wn.2d 669, 677, 675 P.2d 209 (1983) (citing *Holloway v. Arkansas,* 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978); *Cuyler v. Sullivan,* 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980); *Wood v. Georgia,* 450 U.S. 261, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981)).

The duty on the trial court to initiate inquiry into possible conflicts was established by the *Holloway, Sullivan* and *Wood* cases. In *Holloway,* three codefendants represented by the same attorney each desired to testify at their trial. Their attorney expressly informed the trial court of the possible conflict of interest this presented. The trial court permitted the defendants to testify without appointing separate counsel or ascertaining whether the risk of conflict was too remote to require separate counsel. The Supreme Court held that this failure by the trial court per se deprived the defendant of effective assistance of counsel. *Holloway,* 435 U.S. at 484.

*Sullivan* followed *Holloway,* further clarifying the duty to inquire into conflicts. *Sullivan* involved three codefendants who were represented by the same two attorneys. At separate trials, Sullivan was convicted, and his two codefendants were acquitted. At no time did Sullivan or his attorneys object to the multiple representation. The Supreme Court, on review, found no duty to inquire and noted that although *Holloway* requires trial courts to investigate timely objections to multiple representation, "nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case." *Sullivan,* 446 U.S. at 346. The Court then went on to say that

> *[a]bsent special circumstances, . . .* trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly

accept such risk of conflict as may exist. . . . Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.

(Footnotes and citations omitted.) (Italics ours.) *Sullivan,* 446 U.S. at 346–47.

In *Wood,* the Supreme Court applied *Sullivan* to further clarify the duty of the trial court to initiate inquiry into possible conflicts. *Wood* involved three codefendants who, while employed by an adult theater and bookstore, were arrested and charged with distributing obscene materials. At trial, they were each convicted and subsequently placed on probation. Probation was revoked, however, for failure to pay fines levied as part of the sentences. From the time of their arrests, the three were represented by a single lawyer who had been hired and paid by their employer. The Supreme Court found that "the *possibility* of a conflict of interest was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further." *Wood,* 450 U.S. at 272. In support of this statement, the Court cited *Sullivan,* stating that "*Sullivan mandates* a reversal when the trial court has failed to make an inquiry even though it 'knows or reasonably should know that a particular conflict exists.'" *Wood,* 450 U.S. at 272 n.18 (quoting *Sullivan,* 446 U.S. at 347).

In *Richardson,* the Washington Supreme Court announced a rule relying on parts of *Holloway, Sullivan* and *Wood. Richardson* involved a situation in which an important defense witness was testifying when the prosecutor suggested that the witness should be advised of his right against self-incrimination. When the court did this, it became apparent that the defendant's attorney had previously represented the witness. The trial court recognized the danger of a conflict of interest, but made no inquiry. Instead, at defense counsel's suggestion, the trial court allowed the witness to "testify generally". *Richardson,* 100 Wn.2d at 672. On review, the *Richardson* court found that on these facts the trial court had a duty to inquire, noting

that not only did the witness state in open court that the defendant's attorney was his attorney, but also that the trial court had recognized the danger of conflict. *Richardson,* 100 Wn.2d at 678.

However, a careful reading of *Sullivan* indicates that trial courts do not have a duty to initiate an inquiry into the propriety of multiple representation in every case. *Sullivan,* 446 U.S. at 346. This duty only arises if there are "special circumstances" such that "the trial court knows or reasonably should know that a particular conflict exists". *Sullivan,* 446 U.S. at 346–47.

The present case is factually distinguishable from each of the above cases. Here, we do not have a witness who is actually testifying. Furthermore, the trial court was not expressly informed of a possible conflict, and the defense attorney was not hired or paid by someone with a potentially conflicting interest. The present case involves the interview of a potential witness. Nothing said in the *Richardson* opinion or the cases relied upon in *Richardson* suggests that the trial court has a duty to inquire into possible conflicts where nothing more is involved than a pretrial or out-of-court interview of a potential witness. On the contrary, these cases strongly indicate that the trial court must inquire only where there is a conflict involving a witness who is actually presented to be sworn and expected to give testimony. Under the facts of this case, the trial court did not have a duty to initiate an inquiry.

With regard to the second rule, the actual conflict necessary to require reversal must be readily apparent; the mere fact of dual representation does not give rise to an inference of ineffective assistance of counsel. *State v. James,* 48 Wn. App. 353, 365–66, 739 P.2d 1161 (1987). The required conflict will not be found unless the appellant can point to specific instances in the record to suggest an actual conflict or impairment of his interest. *James,* 48 Wn. App. at 366 (citing *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir. 1983)). The appellant must demonstrate that counsel *actively* represented conflicting interests and that

an actual conflict of interest *adversely affected* his lawyer's performance. *State v. Hatfield*, 51 Wn. App. 408, 413, 754 P.2d 136 (1988) (citing *Strickland v. Washington*, 466 U.S. 668, 692, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)).

An actual conflict of interest adversely affecting counsel's performance does not exist in the present case. The juvenile's testimony, as he indicated in the interview with Martinez' counsel, would have been harmful to Martinez. Martinez argues that there was an actual conflict because both he and the juvenile were represented by the same law firm and that his attorney's decision not to call the juvenile as a witness suggests that his attorney did not desire to place himself in the position where, in order to advance Martinez' defense, he must attack the credibility of his firm's other client. The flaw in this argument is that calling the juvenile as a witness would not help Martinez. Counsel's decision not to call the juvenile served the best interests of both Martinez and the juvenile. Avoiding the risk of probable incriminating evidence was best for Martinez and not exposing the juvenile to the hazards of testifying best served his interests.[1] Martinez' conflict of interest argument is rejected.

### RIGHT TO TESTIFY IN ONE'S OWN BEHALF

The second issue is whether Martinez' constitutional right to testify in his own behalf was violated by the trial court.

The right to testify in one's own behalf is guaranteed by article 1, section 22 (amendment 10) of the Washington Constitution and by the sixth and fourteenth amendments to the United States Constitution. This right is absolute, and cannot be abrogated, even by defense counsel. *State v. King*, 24 Wn. App. 495, 499, 601 P.2d 982 (1979). However,

---

[1]It should also be noted that calling a witness for the sole purpose of impeaching him is a pointless exercise. If the impeachment would involve use of otherwise inadmissible evidence, it would be improper. *State v. Lavaris*, 106 Wn.2d 340, 721 P.2d 515 (1986); *see also State v. Kennedy*, 8 Wn. App. 633, 638–39, 508 P.2d 1386 (1973).

whether or not a defendant will take the stand is a matter of trial tactics that courts ordinarily will not second guess. *State v. Peyton,* 29 Wn. App. 701, 718, 630 P.2d 1362, *review denied,* 96 Wn.2d 1024 (1981).

In the present case, Martinez argues that his constitutional right to testify in his own behalf was violated because the trial court denied his request to retake the stand. Martinez' right to testify in his own behalf was not violated for two reasons.

■ First, the trial court has wide discretion in permitting the recall of a defendant and in excluding cumulative evidence. *United States v. Keller,* 523 F.2d 1009 (9th Cir. 1975). The recalling of a witness prior to the close of a party's case is a matter for the discretion of the trial court, and will not be reversed absent a manifest abuse of discretion. *State v. McGinley,* 18 Wn. App. 862, 573 P.2d 30 (1977). What Martinez wanted to do in the present case was to retake the stand and "clear up some other things" by testifying that he had a civil action pending against the Bellingham Police Department, that he "had just got out of the hospital" and could not have been doing the climbing and running that the police officers testified to, and that there was a "possibility" that the pipe tool was planted on him when he was searched by police a second time. However, Martinez had already testified concerning these matters. He had testified that he had recently undergone back surgery, that he had to be lifted up on the roof by the juvenile, and that he was on medication. He had also been given the opportunity, on cross examination, to testify concerning the search and the civil action:

Q You don't know how this [the pipe tool] got on you?
A It wasn't found on me. It wasn't in my pockets.
Q Are you saying Officer Lampman is mistaken that he removed it from your person?
A I believe so. It was—it doesn't belong to me.
Q Can you share with the jury what reason Officer Lampman might have to lie by identifying you in the

bank and to plant a pipe tool on your person at the time of your arrest?

A If I knew that, I'd give you the answer.

Allowing Martinez to testify further concerning these matters would have had a cumulative effect. The trial court did not abuse its discretion in denying Martinez' motion to reopen his testimony.

█ Second, Martinez' attorney did not request the court to allow Martinez to retake the stand. At trial, Martinez was represented by counsel; he was not acting pro se, and he had not made a request to act pro se. There is no basis for now second guessing Martinez' attorney's decision not to recall Martinez as a witness. *State v. Peyton,* 29 Wn. App. at 718. For both of these reasons, Martinez' constitutional right to testify in his own behalf was not violated by the trial court.

The judgment is affirmed.

WEBSTER, J., concurs.

PEKELIS, J. (dissenting)—I respectfully dissent from the majority's conclusion on the ineffective assistance of counsel claim. The trial court's failure to inquire into counsel's apparent conflict of interest requires reversal of Martinez' conviction.

The majority opinion correctly identifies the two rules to be applied in situations where a defendant alleges ineffective assistance of counsel due to a conflict of interest by his attorney, stating:

> First, a trial court commits reversible error if it knows or reasonably should know of a particular conflict into which it fails to inquire. Second, reversal is always necessary where a defendant shows an actual conflict of interest adversely affecting his lawyer's performance. In neither situation need prejudice be shown.

*In re Richardson,* 100 Wn.2d 669, 677, 675 P.2d 209 (1983) . . .

Although it would seem clear that the first rule controls here, the majority, at page 715, declines to apply the rule to the instant case stating,

> [n]othing said in the *Richardson* opinion or the cases relied upon in *Richardson* suggests that the trial court has a duty to inquire into possible conflicts where nothing more is involved than a pretrial or out-of-court interview of a potential witness.

I do not agree. The *Richardson* court unequivocally states, "the rules apply to any situation where defense counsel represents conflicting interests" and it assigns to the court the responsibility of "active protection" of a defendant's rights when it is aware of the possibility of the conflict of interest. *Richardson,* 100 Wn.2d at 677. The suggestion of the majority opinion that case law requires only that the trial court inquire "where there is a conflict involving a witness who is actually presented to be sworn and expected to give testimony", majority at 715, is not found in the cases and does not logically flow therefrom. By limiting the rule to situations where counsel's other client is actually testifying, the prophylactic purpose of the rule is severely reduced. If, as claimed by Martinez here, counsel is burdened by an actual conflict of interest, he would be wise to prevent his other client from testifying. Under the majority's view, counsel manages to insulate himself totally from the scope of the rule by not calling his other client despite the fact that the defendant client ardently requests it.

In addition to creating this ironic result, the majority's analysis is in conflict with the approach we took in *State v. Hatfield,* 51 Wn. App. 408, 754 P.2d 136 (1988). In *Hatfield* we addressed the issue of whether a conflict can arise in the context of pretrial advisement of a witness regarding his Fifth Amendment rights. Both the defendant and the witness were represented by the Seattle–King County Public Defender Association. In keeping with *Richardson,* we recognized that "simultaneous representation of a defendant and a witness with opposing interests can give rise to a

conflict which implicates the right to counsel". *Hatfield,* 51 Wn. App. at 410. However, because the trial court had recognized the conflict and appointed an attorney not connected with the Seattle–King County Public Defender Association to advise the witness of his privilege against self–incrimination, we found that Hatfield could not establish an ineffective assistance of counsel claim. *Hatfield,* 51 Wn. App. at 414.

The situation we now face is nearly identical to the one which necessitated further inquiry by the trial court into the apparent conflict in *Hatfield.* The majority distinguishes the situation here because, unlike in *Hatfield,* the trial court was not expressly informed of a possible conflict. This is not a material distinction, however. In *Richardson* the court stated that "a trial court commits reversible error if it knows or *reasonably should know* of a particular conflict into which it fails to inquire." (Italics mine.) *Richardson,* 100 Wn.2d at 677.

Here, the trial court was well aware that both the witness and the defendant were represented by the same office. And, while simultaneous representation is not a conflict of interest per se, *see Holloway v. Arkansas,* 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173 (1978), once the court is aware that the clients are adverse to one another, the potential for conflict absolutely requires further inquiry. *Richardson,* 100 Wn.2d at 677; *Hatfield,* 51 Wn. App. at 410.

The facts clearly demonstrated the adversity between the two clients. One client, the defendant, wanted to call counsel's other client as a witness, counsel refused, and the defendant vociferously objected to this decision. In addition, it is clear the defendant wanted to elicit the potential witness's prior statement exculpating him and thus put the witness's credibility at issue. This was sufficient to alert the trial judge to the conflict.[2] *Sullivan*[3] *mandates* a reversal

---

[2]It appears from the record that counsel's other client, the juvenile, had not yet been tried, and thus, both clients had "active" cases.

when the trial court has failed to make an inquiry in a situation where it "knows or reasonably should know that a particular conflict exists."'" *Richardson*, 100 Wn.2d at 677 (quoting *Wood v. Georgia*, 450 U.S. 261, 272 n.18, 67 L. Ed. 2d 220, 101 S. Ct. 1097 (1981)).

Finally, I think we cannot dispel the mandate of *Richardson* that the trial court make inquiry by mere speculation on the appropriateness of counsel's tactics. The majority ultimately has to bolster its holding on after-the-fact evaluation of counsel's decision not to call the witness. It is precisely because no inquiry was made that we can make no appraisal of the value or lack thereof of the testimony. The majority's suggestion that the testimony would be inadmissible is even more speculative. If no one objects, testimony is admitted. We can not divine whether any objection would have been made, nor whether, if made, it might have been sustained.

Once it is established that the trial court erred in failing to either ascertain that the risk of conflict was remote or appoint different counsel, we must reverse. An error of this nature by the trial court can *never* be harmless, *Richardson*, 100 Wn.2d at 676, and thus requires that we remand the case for a new trial.

Review denied at 112 Wn.2d 1026 (1989).

---

[3]*Cuyler v. Sullivan*, 446 U.S. 335, 347, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980).