Gerald Gene CLARK, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 82S00–9401–CR–00035.

Supreme Court of Indiana.

July 10, 1996.

Rehearing Denied Nov. 1, 1996.

John D. Clouse, John P. Brinson, Evansville, for Appellant.

Pamela Carter, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for Appellee.

SELBY, Justice.

Gerald Gene Clark was convicted of Murder, a Class A Felony; and Attempted Murder, a Class A Felony. The trial court imposed enhanced sentences of sixty years for murder, enhanced by an additional twenty years by reason of an habitual offender adjudication, for a total of eighty years; and fifty years for attempted murder. The trial court ordered Clark to serve the sentences concurrently. This case comes to us on direct appeal. We affirm the murder conviction, but we reverse the attempted murder conviction.

The issues presented for review are whether: (1) the trial court erred in refusing to allow Clark to recall a witness; (2) the trial court erroneously instructed the jury on voluntary manslaughter; (3) the trial court erroneously instructed the jury on the elements of attempted murder; (4) the trial court erred in refusing to allow the defendant to introduce evidence of specific acts of prior misconduct; and (5) defense counsel's failure to object to inadmissible evidence and prosecutorial misconduct constitutes ineffective assistance of counsel.

### FACTS

On January 21, 1993, Clark, Louis and Fonda Rich, and the Rich's two children, visited Tim Williams at his home in Evansville. When they arrived, Williams was not at home, but his friend, Richard Couch, invited the group in. When Williams returned home, he asked the visitors to leave. They left the house, but their car would not start. The Brookovers, twin brothers John and Jeff, came from down the street to help. Jeff fixed the car, and then the Brookovers invited the group to come to their home for drinks.

During the evening, John Brookover heard the back door rattling. Upon investigation, he discovered Clark trying to leave with some coats. John told him, "You're not going anywhere with those jackets." John and Clark returned to the living room, and John informed his brother that Clark had attempted to take the coats. Jeff got angry, threw Clark against the wall, then pushed him out the door.

A short time later, Clark returned to the Brookovers' home. A fight ensued between the Brookovers and Clark. Both brothers sustained knife wounds inflicted by Clark. Jeff died of a stab wound to his chest. John was treated for a wound to the neck.

### I.

Clark claims that the trial court erred in refusing to permit him to recall a defense witness, Robert Oldham. Oldham is one of the children of Louis and Fonda Rich. He was eleven years old at that time.

The decision as to whether to permit the recall of a witness is within the sound discretion of the trial court. *Wray v. State,* 547 N.E.2d 1062, 1066 (Ind.1989). Clark does not dispute this; however, he contends that where refusal to permit a recall has prejudiced the defendant, such refusal constitutes an abuse of discretion. The cases cited by defendant in support of his argument are all from other jurisdictions; moreover, none are directly on point. Most involve defense requests to recall a key prosecution witness for the purpose of laying the foundation for the witness' impeachment, where the witness' credibility was key to the prosecution's case. Further, *U.S. v. Keller,* 523 F.2d 1009 (9th Cir.1975), also cited by defendant, was a net-worth tax prosecution in which the court refused recall of a witness where the purpose of the testimony was to introduce newly discovered documentary evidence.

In this case, the prosecutor suggested by his cross examination of Oldham that the witness had changed his story after meeting with defense counsel. Defense counsel did not follow up with any redirect examination, yet later wanted to recall the witness to rebut the appearance of witness tampering. Defense counsel's offer of proof was that the witness would testify that counsel had not coached him. This testimony, unlike the excluded documentary testimony in *Keller,* 523 F.2d at 1011, or the excluded impeachment testimony in the other cases cited by defendant, was scarcely crucial to the defense in this case. Moreover, as the trial court noted, defendant had the opportunity to elicit this testimony on redirect, but chose not to. Thus, the trial court did not abuse its discretion by prohibiting the recall of this witness.

### II.

Clark next contends that the trial court improperly instructed the jury on the lesser included offense of voluntary manslaughter. Clark argues that the instruction was erroneous because it could lead the jury to believe that proof of sudden heat is the responsibility of the defendant.[1]

1. The trial court gave the following instruction for Voluntary Manslaughter:

"Sudden heat" is a mitigating factor which reduces what would otherwise be murder to voluntary manslaughter. "Sudden heat is anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary man; it prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection." *McBroom v. State*, 530 N.E.2d 725, 728 (Ind. 1988). The record in this case includes substantial evidence of sudden heat. Louis Rich, Robert Oldham, and Clark himself testified that Clark was attacked and beaten by the Brookover twins and that they were involved in a struggle which ultimately resulted in the stabbings. Where there is evidence of sudden heat, the burden is on the State to negate the existence of sudden heat beyond a reasonable doubt before a conviction of murder may be had. *Morrison v. State*, 588 N.E.2d 527, 529 (Ind.Ct.App.1992).

Once evidence of sudden heat has been introduced in a murder case, the defendant is entitled to a correct instruction on the lesser included offense of voluntary manslaughter, as well as an instruction on murder which places the burden on the State to negate sudden heat. Where, however, the defendant neither objects to the instruction nor tenders a proper instruction, the matter is waived. *Bane v. State*, 587 N.E.2d 97, 101 (Ind.1992). As Clark's defense theory was self defense, he objected to all lesser included offenses because his counsel believed that "[t]he inclusion of lesser-included offenses in this case will tend to result in an illegal compromise verdict by the jurors." (R. at

COURT'S INSTRUCTION NO. 4
The crime of Voluntary Manslaughter, an included offense of Count I: Murder, is defined by statute as follows:
"A person who knowingly * * * kills another human being while acting under sudden heat, commits Voluntary Manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon."
The existence of sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter.
To convict the defendant of Voluntary Manslaughter, the State must have proved each of the following elements:
The defendant:
1. knowingly

1054). Compromise verdict was the only ground for objection. The jury did not find any of the included offenses and chose to disbelieve defendant's theory of self defense. Thus, no legitimate questions of error were preserved.

Acknowledging that no objection was made on the issue of sudden heat, Clark contends that the instruction constituted fundamental error because it failed to place the burden on the State to negate the existence of sudden heat. We have recently addressed this issue in *Bane*, 587 N.E.2d 97. In that case, the voluntary manslaughter instruction was technically erroneous, as it placed the burden on the prosecution to prove the existence of sudden heat. We found that the "instruction does not constitute fundamental error because it did not deprive the defendant of his due process rights." *Id.* at 101. Here, the instruction was not technically erroneous, but merely failed to specify the burden of proof with respect to sudden heat. In addition, the instruction properly informed the jury that sudden heat is a mitigating factor. Thus, the instruction did not deprive the defendant of his due process rights, and under the standard elucidated in *Bane*, there was no fundamental error.

### III.

Clark was charged with and convicted of the attempted murder of John Brookover. He now contends that the jury instruction is a violation of the law as set forth by this court in *Spradlin v. State*, 569 N.E.2d 948 (Ind.1991).[2] In *Spradlin*, we held that

2. killed Jeffrey Brookover (without legal justification)
3. another human being
4. by means of a deadly weapon.
"If the State proved each of these elements beyond a reasonable doubt, and you further find the defendant did the killing while acting under sudden heat, you should find the defendant guilty of Voluntary Manslaughter, a Class A felony, an included offense of Count I." (R. at 1016—17).

2. The trial court gave the following instruction on the elements of the offense of attempted murder:

COURT'S FINAL INSTRUCTION NO. 3
The statute defining "Attempt" reads as follows:
"(a) A person attempts to commit a crime when, acting with the culpability required for com-

an instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing. *Id.* at 950. Although Clark did not object to the instruction when given, he now argues that the instruction falls short of the *Spradlin* requirements.

Clark charges error in that the instruction does not require the State to prove the requisite specific intent to kill.[3] He argues that even without a contemporaneous objection, failure to meet this standard requires reversal. Indeed, in *Taylor v. State,* 616 N.E.2d 748 (Ind.1993), we held that failure to instruct the jury on the proper mens rea for attempted murder constitutes fundamental error. Here, the trial court's instruction on attempted murder does not contain the specific intent-to-kill language. Instead, the instruction would allow conviction if "[t]he defendant ... *knowingly*.. attempted to kill ... another human being (John Brookover)." (R. at 1015) (emphasis added). This instruction clearly falls short of this *Spradlin* requirement.

■■ In response to this argument, the State points out that the court included in its general instructions to the jury that "[i]n order to find the defendant, Gerald Clark, guilty of the crimes charged, you must find beyond a reasonable doubt that the defen-

dant, Gerald Clark, had acted with the specific intent to kill." (R. at 948). Thus, the State argues, the court properly instructed the jury with specific language as to the mens rea requirement for attempted murder. Ordinarily, when the defendant fails to object to a particular instruction, as in this case, "we look to the instructions as a whole to determine if they sufficiently informed the jury of the specific intent requirement for attempt." *Greer v. State,* 643 N.E.2d 324 (Ind.1994). Thus, the State's argument would appear to have merit. However, we have recently held that "where the trial court lists the elements of attempted murder and includes an incorrect mens rea, this error cannot be cured by another instruction." *Beasley v. State,* 643 N.E.2d 346, 348 (Ind. 1994) (citing *Greer,* 643 N.E.2d 324). Since the trial court's instruction for attempted murder allows conviction on "knowingly" and does not require "intent to kill," the trial court's correct statement in its general instructions cannot cure this erroneous instruction. Therefore, Clark's attempted murder conviction cannot stand.

## IV.

Clark contends that the trial court erred in refusing to allow him to introduce evidence of John Brookover's acts of prior misconduct. Since we have already determined that the attempted murder conviction must be vacated, we need not address this issue at this time.

mission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime. An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted."
The crime of murder is defined by statute as follows:
"A person who knowingly kills another human being, * * * commits murder, a felony."
To convict the defendant of Attempted Murder, as charged in Count II, the State must have proved each of the following elements:
The defendant
1. knowingly
2. attempted to kill
3. another human being (John Brookover).
If the state failed to prove each of these elements beyond a reasonable doubt, you should find the defendant [not] guilty of the crime of

Attempted Murder, Class A felony, as charged in Count II.
(R. 1014–15).

3. We note that this jury instruction is very similar to the attempted murder jury instruction in *Jackson v. State,* 575 N.E.2d 617 (Ind.1991). In *Jackson,* the primary issue was identity of the assailant. Under those circumstances, we held that "[w]hile 'attempting to kill' is not synonymous with 'intending to kill,' we believe that no significant potential for harm resulted from the substitution of 'attempting' for 'intending' in this case." *Id.* at 621. However, in the case at bar, mens rea is the central issue for the attempted murder charge, and identity is not in issue. Thus, we do not find it appropriate to allow "attempted to kill" to substitute for "intended to kill" in this case.

## V.

 Finally, Clark argues that he received ineffective assistance of counsel. His claim involves counsel's failure to object to certain evidence, as well as failure to object to prosecutorial misconduct. Review of ineffective assistance of counsel claims involve a two-step process. The "appellant must make a preliminary showing that the performance of his trial counsel was deficient; he must then show that he suffered prejudice as a result." *Pemberton v. State,* 560 N.E.2d 524, 526 (Ind.1990) (discussing *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Counsel is presumed to be competent; "[i]solated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffectiveness of counsel." *Id.*

 With respect to the evidence objections, Clark asserts that his counsel should have objected to testimony about him playing with a knife on the evening in question. The basis of Clark's objection to this testimony is that "evidence of criminal activity other than that charged is inadmissible on the subject of guilt." *McManus v. State,* 433 N.E.2d 775, 778 (Ind.1982). "The rationale behind this general rule, sometimes termed 'the propensity rule,' is that the prejudicial effect of such evidence outweighs any probative value." *Lannan v. State,* 600 N.E.2d 1334, 1337 (Ind. 1992).[4] However, playing with a knife is not, in and of itself, a crime. Moreover, Clark himself testified that he was playing with the knife when he was joking and clowning earlier that evening. Further, the comments by the prosecutor and the evidence presented were not used to show the defendant's propensity to attack other people, but were used to demonstrate that he was in possession of a knife. Accordingly, counsel's performance was not deficient by failing to object to its admission.

 Clark also argues that his counsel failed to object to testimony regarding his character. During cross examination of several police officers, the State brought out evidence of defendant's reputation that he was "somewhat rowdy" and liked to drink. Since evidence of a person's character generally is not admissible to demonstrate that the person acted in a manner consistent with that character, *e.g. Chapman v. State,* 469 N.E.2d 50, 52 (Ind.Ct.App.1984)[5] an objection based on admissibility of character evidence may have been sustained. However, there is sufficient testimony that the defendant had been drinking all evening. Thus, any error in admitting testimony of a character trait for drinking would have been harmless. Further, given the nature of the events of the evening, the mere statement that defendant was somewhat rowdy is insufficient to cause the defendant prejudice.

 Clark next contends that trial counsel's failure to object to prosecutorial misconduct amounted to ineffective assistance of counsel. To review the prosecutorial misconduct claims, we first determine whether the prosecutor in fact engaged in misconduct, then determine whether any misconduct which occurred placed the defendant in a position of grave peril to which he should not have been subjected. *Moore v. State,* 652 N.E.2d 53, 57 (Ind.1995) (citing *Maldonado v. State,* 265 Ind. 492, 355 N.E.2d 843 (1976)).

 Clark argues that his counsel should have objected to the prosecutor's statement, "It's presumed that a person with a prior felony conviction may not always tell the truth." (R. at 839). We agree that this is an overstatement, and due to the fact that the prosecutor repeated it, claiming that this is "what the law says," (R. at 913), it could be seen as misconduct. However, despite defendant's assertion to the contrary, the trial court properly instructed the jury on the use of prior convictions for impeachment purposes. (R. at 952). In view of this limiting instruction, the admittedly exaggerated statements by the prosecuting attorney did not place the defendant in grave peril.

---

4. The *Lannan* court specifically adopted FED. R. EVID. 404(b). This rule does allow such evidence to be admitted if "for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Indiana has since codified this rule, effective January 1, 1994 (after Clark's trial), with the adoption of the Indiana Rules of Evidence.

5. This also has been codified, as IND. R. EVID. 404(a).

Other statements by the prosecutor which formed the basis for Clark's prosecutorial misconduct claim involve the prosecutor's comments on the law of self defense, including a statement telling the jurors that they "don't have to put [themselves] in Mr. Clark's moccasins." (R. at 909). These statements, however, were not used as an attempt to claim that self-defense should not be analyzed from the defendant's standpoint. Rather, they were used to tell the jury that they need not empathize with the defendant, as urged by defense counsel. We do not find this to be misconduct.

Also, defendant claims that it was misconduct for the prosecutor to state that Clark denied trying to steal the coats because if he admitted it he would not be able to claim self defense. However, trial counsel did in fact respond to these last remarks. (R. at 901–02). Although he chose to respond in his closing arguments rather than by objecting to the prosecutor's comments, such a decision is a choice of strategy that this Court will not second guess. *Hill v. State*, 561 N.E.2d 784 (Ind.1990). Given that trial counsel's closing arguments informed the jury that the incident with the coats is irrelevant to the claim of self defense, we cannot find that the prosecutor's statement placed the defendant in grave peril. Thus, this claim fails both prongs of the ineffective assistance of counsel test; trial counsel's performance was not deficient, and even if it were, there is no prejudice as it fails prosecutorial misconduct analysis.

Examining the over-all performance of trial counsel, we cannot say that the decisions counsel made as to whether to object to certain questions or statements were not legitimate exercises of his judgment, nor can we perceive any prejudice suffered by Clark due to prosecutorial misconduct. Accordingly, we reject defendant's claim of ineffective assistance of counsel. *See Strickland,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

## CONCLUSION

We affirm Clark's murder conviction. We reverse Clark's attempted murder conviction and remand for proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.