73 P.3d 376 (2003)
STATE of Washington, Respondent,
v.
Bryant O'Keith WILLIAMS, Appellant.
No. 28029-9-II.
Court of Appeals of Washington, Division 2.
June 10, 2003.
Publication Ordered July 29, 2003.
*377 Catherine E. Glinski, Attorney at Law, Manchester, WA, for Appellant.
Claire Allison Bradley, Randall Avery Sutton, Kitsap County Prosecutors Office, Port Orchard, WA, for Respondent.
MORGAN, J.
Bryant O'Keith Williams appeals five convictions of forgery. We affirm.
On May 31, 2000, Williams was involved in a minor auto accident while driving a car belonging to a friend, Kevin Perry. Williams identified himself as Daryl Taylor, using a California drivers license that Taylor had left in Petty's car. The other driver was at fault.
On June 1, 2000, Williams went to see an attorney. He partially completed a 20-page "Client Information Sheet" in Taylor's name. He also submitted a 1999 W-2 form in Taylor's name.
On June 8, 2000, Williams went to see a chiropractor. He filled out an intake form in Taylor's name. He was treated several times by the chiropractor and a licensed massage therapist.
On September 7, 2000, Williams went to see a dentist. He filled out a "Patient Case History" in Taylor's name. He was treated on just one occasion.
Meanwhile, the attorney presented a claim to the other driver's insurance company. Believing that Williams was Taylor, the attorney made the claim in Taylor's name.
On July 11, 2000, the insurance company issued a property-damage check for $1,866.20. The check was payable to both the attorney and Taylor. The attorney endorsed the check and gave it to Williams. Williams endorsed the check, using Taylor's name, and cashed it at the Money Tree in Bremerton.
On January 22, 2001, the insurance company issued a check for $15,000 in "full and final settlement of all claims."[1] In exchange, Williams signed a "Release of All Claims" in Taylor's name.
The $15,000 check was payable to the attorney and Taylor. Williams endorsed Taylor's name and left the check with the attorney. The attorney endorsed his own name, deposited the check in his trust account, and, after paying the health care providers and himself, issued a check to Taylor for the remainder.[2]
In February 2001, the real Daryl Taylor discovered that Williams had used his identity. In March 2001, the police interviewed Williams, who was in custody on another matter. After receiving and waiving his Miranda[3] rights, Williams admitted that he had forged several documents. When he was shown a photocopy of the front and back of *378 the July check, including the endorsement in Taylor's name, he inscribed on the photocopy, "I signed this check."[4]
The State ultimately charged Williams with six counts of forgery.[5] Count I was based on the check for $1,866.20; Count II on the check for $15,000.00; Count III on the "Release of All Claims"; Count IV on the 1999 W-2; Count V on the attorney's "Client Information Sheet"; and Count VI on the chiropractor's "Patient Case History Form[.]"
A jury trial began on September 24, 2001. The next day, September 25, the State presented its case, and the defense briefly presented a private investigator. Taylor testified, among other things, that he was a customer at the Money Tree. A witness named Tanya Johnson testified that in July 2000, while she was working at the Money Tree, she had cashed a check for Williams. The check was payable to Taylor, she did not see Williams endorse it, and she had neglected to check Williams' identification. Defense counsel cross-examined her and, when she finished, did not request that she remain in attendance.[6]
The next day, September 26, court convened at 9 a.m.[7] Defense counsel indicated that he wanted to recall Johnson for further cross-examination,[8] but otherwise would have no further witnesses. Johnson had to take her husband to the doctor, so she could not appear personally until 11 a.m. She was expected "to testify that she's only seen Mr. Williams once and that she knows Daryl Taylor as a customer."[9] The court "decline[d] to hold up the trial[,]" reasoning that her testimony would be "marginal at best[,]" and would not "substantially enhance the defense of this case."[10] Later that day, the jury convicted on five counts but acquitted on Count IV (the W-2 form).
On October 30, 2001, Williams moved to dismiss four of the five counts on which he had been convicted. Citing the constitutional proscription against double jeopardy, he claimed that because he had engaged in only one scheme to defraud, he could only be "convicted of one count[.]"[11] The court denied the motion, and it later sentenced him to 29 months in prison.
Williams raises three questions on appeal. (1) Does the double jeopardy clause bar the State from convicting him on five counts of forgery that arise from one scheme to defraud? (2) Did the trial court err by denying his motion to recall Johnson? (3) Did defense counsel render ineffective assistance by not fully examining Johnson the first time she was on the stand?

I.
Williams argues that all of his forgeries "arose out of a single intent to defraud, and thus [that] there was only one unit of prosecution."[12] He concludes that he should have been convicted on one count of forgery, not on five counts of forgery. The State responds that "the gravamen of forgery" is not "fraudulent intent," but rather "is the falsification of a document";[13] thus, Williams was properly convicted on all five counts.
The double jeopardy clause prohibits a defendant "from being punished multiple times for the same offense."[14] One situation in which that can occur involves multiple charges based on the same *379 statute. In that situation, a court must inquire, "[W]hat `unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute."[15]
The statute in issue here is RCW 9A.60.020. It provides:
(1)A person is guilty of forgery if, with intent to injure or defraud:
(a) He falsely makes, completes, or alters a written instrument or;
(b) He possesses, utters, offers, disposes of, or puts off as true a written instrument which he knows to be forged.
This statute plainly and unambiguously defines the unit of prosecution as the written instrument that is falsely made or put off as true. Here, each of the five counts was based on a different written instrument. Thus, each involved a different unit of prosecution, and none abridged Williams' right against double jeopardy.

II.
Williams argues that the trial court erred by denying his motion to recall Johnson. Such a motion is addressed to the trial court's discretion,[16] the exercise of which we review only for abuse.
For several reasons, we do not perceive abuse here. First, Williams had ample opportunity to examine Johnson the day before. Second, he could have asked then that she be in attendance the next day,[17] and all present could have discussed and resolved her problems with doing that. Third, he did not subpoena Johnson, or otherwise arrange for her to re-appear in court at the proper time. Fourth, he offered to prove no more than what was already inferable from testimony given the day beforethat she had only seen Williams once and that she had seen Taylor as a customer. Fifth and most importantly, the evidence against him, including his confession and the inscription on the photocopy of the July check, was overwhelming, and it was apparent from his offer of proof that Johnson's testimony would make virtually no difference to the case. Facing with these particular circumstances, the trial court was not required to wait for Johnson to appear, and it did not err by denying the motion to recall her.[18]

III.
Williams argues that his counsel rendered ineffective assistance by failing to fully examine Johnson the first time she was on the stand. To establish ineffective assistance of counsel, the defendant must show (1) deficient performance and (2) resulting prejudice.[19] Performance is deficient if, considering all the circumstances, it falls below an objective standard of reasonableness.[20] Prejudice results if, but for the deficient performance, the outcome of the trial would have been different.[21]
Williams has not shown prejudice here. Williams confessed to the police that he forged Taylor's name on the July check. Williams inscribed a photocopy of the check with the words, "I wrote this check." The attorney testified that his office had received the check and given it to Williams. The manager of the Money Tree testified that the check was cashed at her store. Even if defense counsel had more fully cross-examined Johnson the first time she was on the *380 stand, the outcome of the trial would have been the same.
Affirmed.
NOTES
[1] Ex. 2.
[2] This check to Taylor was for $6,025.
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Ex. 1.
[5] The State initially charged Williams with two counts of first degree theft. Clerk's Papers (CP) at 1-2.
[6] See CrR 6.12(b).
[7] Report of Proceedings (RP) at 171.
[8] RP at 166.
[9] RP at 166. Daryl Taylor had previously testified that he had been in the Money Tree as a customer.
[10] RP at 171.
[11] RP (11/02/01) at 6.
[12] Br. of Appellant at 9.
[13] Br. of Resp't at 14.
[14] State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998).
[15] Adel, 136 Wash.2d at 634, 965 P.2d 1072.
[16] State v. Martinez, 53 Wash.App. 709, 717, 770 P.2d 646, review denied, 112 Wash.2d 1026 (1989); State v. McGinley, 18 Wash.App. 862, 573 P.2d 30 (1977) (pre-rule case); ER 611(a).
[17] See CrR 6.12(b) (subpoenaed witness is excused at end of his or her testimony "unless either party makes requests in open court that the witness remain in attendance").
[18] We do not overlook, but we do reject, Williams' assertion that the trial court's denial was not just a violation of the rules of court, but also an infringement of his constitutional right to present a defense. In light of the circumstances just described, the denial did not rise to that level.
[19] Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995).
[20] Strickland, 466 U.S. at 688, 104 S.Ct. 2052.
[21] McFarland, 127 Wash.2d at 337, 899 P.2d 1251.